HONOLULU ADVERTISER, INC. dba Honolulu Advertiser; LEE ENTERPRISES, INCORPORATED dba KGMB-TV, and GANNETT PACIFIC CORPORATION dba Honolulu Star-Bulletin, Petitioners, *v.* THE HONORABLE FRANK T. TAKAO; PAULINE ISHII, STATE OF HAWAII through the Department of Prosecuting Attorney, and WILBUR MOYD, Respondents

NO. 6979

MAY 26, 1978

OGATA, ACTING C.J., MENOR, J., CIRCUIT JUDGE LUM
IN PLACE OF CHIEF JUSTICE RICHARDSON, RECUSED;
CIRCUIT JUDGE HAYASHI IN PLACE OF JUSTICE KOBAYASHI,
DISQUALIFIED; AND CIRCUIT JUDGE BURNS IN PLACE OF
JUSTICE KIDWELL, RECUSED

OPINION OF THE COURT BY MENOR, J.

A petition for writs of prohibition and of mandamus has been filed seeking (1) to prohibit the respondent district

judge from enforcing his order sealing and preventing the dissemination of the transcript of the preliminary hearing involving respondent Wilbur Moyd and (2) to mandate the respondent Pauline Ishii, a district court reporter, to deliver to the petitioners a copy of the transcript of the preliminary hearing upon the payment of statutory fees.

I

We need not concern ourselves with the request for a writ of mandamus, inasmuch as the record shows that respondent Ishii had prepared a copy of the transcript at the petitioners' request and was prevented from delivering it to them only because of the order of respondent Takao. We are also not here concerned with the public's right to be present and to attend judicial proceedings as we were in *Gannett v. Richardson,* 59 Haw. 224, 58 P.2d 580 (1978). In *Gannett* we held that except under certain rare and compelling circumstances, courtroom proceedings shall be open to the public. The preliminary hearing in this case was open to the public and a news reporter for the petitioners was present at the hearing. The purpose and effect of the seal order was not to impose a restraint upon the right of the petitioners to publish what they had learned from their representative's attendance at the preliminary hearing. *Compare, Nebraska Press Assn. v. Stuart,* 427 U.S. 539 (1976); *Craig v. Harney,* 331 U.S. 367 (1947). The First Amendment does not protect against whatever incidental burdens the respondent judge's order might have placed upon the petitioners' newsgathering capabilities. *United States v. Gurney,* 558 F.2d 1202 (5th Cir. 1977). Freedom of the press is not therefore involved in this action, and the petitioners' entitlement to a copy of the transcript must be determined on the basis of other than constitutional considerations. *See Nixon v. Warner Communications, Inc.,* 98 S. Ct. 1308 (1978); *State v. O'Connell,* 151 N.W.2d 758 (N.D. 1967); *Craemer v. Superior Court,* 265 C.A.2d 216, 71 Cal. Rptr. 193 (1968).

HRS § 606-12 provides that the court reporter "may furnish a transcript of any of his notes, where the same is not intended for purposes of appeal to the Supreme Court, upon the request of any party, without the order of the judge therefor first obtained." We construe the phrase "any party" to mean any person who seeks the transcript for a legitimate and proper purpose. *See New York Post Corporation v. Leibowitz,* 163 N.Y.S.2d 409, 143 N.E.2d 256 (1957). The reporter, however, is always subject to the orders of the presiding judge of the court to which he is assigned, *see* HRS §§ 606-9 and 606-10, and as an officer of the court is under its continuing jurisdiction. The reporter's shorthand notes from which the transcriptions were made were part of the records of the court, and we think that the rules governing public access to public records are applicable in this case.

Every court has supervisory power over its own records and files. And while the public does generally have the right, established by the common law, to inspect and copy public records and documents, including judicial records, *State v. O'Connell, supra; Craemer v. Superior Court, supra,* this right of access is not absolute, and the determination of whether and to what extent access is to be permitted "is one best left to the sound discretion of the trial court, a discretion to be exercised in the light of the relevant facts and circumstances of the particular case." *Nixon v. Warner Communications, Inc., supra,* at 1312. In this regard, the right of the news media to inspect and copy is no greater than that of the general public. *Id.*

In granting respondent Moyd's motion, which was joined in by the prosecution, the respondent district judge stated:

"[T]he Court has heard arguments of counsel and has examined the evidence concerning the preliminary hearing and the oncoming trial of the Defendant Moyd. The Court has seen clippings of the newspaper articles and is also aware of the fact that the other media, such as radio and television, has also given wide-spread publicity to Defendant Moyd's criminal charges.

"The Court feels that the right of the press and public to access to public records is not unqualified and that

must be weighed against the right of defendant to a fair trial. It also feels that under the Hawaii Revised Statutes, the courts have control over the records. The Court has taken all of this into consideration and has weighed this publicity in terms of the right of access to public records of the press and members of the public.

"The Court is aware of the fact that May 1st, 1978 has been set for the date of defendant's trial and feels that any publicity with respect to the transcript will of necessity contain reference to whether or not Judge Richardson had a basis for his ruling in discharging the rape charge against the Defendant Moyd.

"The Court has considered other alternatives of insuring a fair trial, including the change of venue and delay of trial, and so on.

"It is this Court's opinion that the movant, which in this case is defendant, and joined in by the prosecutor agreeing to the proposition that if the transcript is released it is not sure whether the defendant will have a fair trial, defendant has sustained her burden of showing that there is substantial likelihood that if the transcript is released, it will be prejudicial to the defendant and that the prejudice is immediate and sufficiently grave to justify continuing the order sealing the transcript until after the trial of the Defendant Moyd."

Whether or not we would have decided the motion to seal any differently is not the issue. The matter was addressed to the sound discretion of the respondent district judge, *Nixon v. Warner Communications, Inc., supra; State v. O'Connell, supra; Craemer v. Superior Court, supra,* and we do not find his determination to have been capriciously and arbitrarily made. *Cf. United States v. Gurney, supra.* Neither was it clearly and as a matter of law erroneous. *Compare, New York Post Corporation v. Leibowitz, supra.*[1] The respondent had

---

[1] The situation faced by the respondent district judge was unlike that faced by the court in Leibowitz where the New York court held that the petitioner before it was entitled to a transcript of the court's charge to the jury in a criminal prosecution. The distinction is apparent from the New York court's own statement:

"In this case, on the other hand, there is no possible conflict between the

ample cause for concern over the right of the defendant to a fair trial by an impartial jury. Not only was there extensive publicity regarding the commission of the crime, but there was also wide media coverage given to public reaction against Judge Richardson's decision at the preliminary hearing, sustaining the sodomy complaint against respondent Moyd but dismissing the rape change against him. Some 23,000 persons signed petitions protesting the dismissal of the rape charge, and questioning the presiding judge's fitness to continue to serve in that capacity. In the midst of all of this publicity, a grand jury was convened which returned an indictment against the accused, not only for the offense of sodomy but also for the crime of rape. The district judge was obviously concerned that further pretrial publicity of this nature might render it difficult for respondent Moyd to obtain a fair and impartial jury at his forthcoming trial. The right of an accused to a fair trial by an impartial jury is fundamental to our system of jurisprudence, *see In re Oliver*, 333 U.S. 257 (1948), and prejudicial pretrial publicity could have the effect of denying him that right, *see Sheppard v. Maxwell*, 384 U.S. 333 (1966); *Rideau v. Louisiana*, 373 U.S. 723 (1963); *Irvin v. Dowd*, 366 U.S. 717 (1961); *Groppi v. Wisconsin*, 400 U.S. 505 (1971).

II

The writ of prohibition is an extraordinary remedy, the object of which is not to cure a mere legal error or to serve as a substitute for appeal, but to restrain a judge of an inferior court from acting beyond or in excess of his jurisdiction. *Chung v. Ogata*, 54 Haw. 146, 504 P.2d 868 (1972); *Nakagawa v. Heen*, 58 Haw. 314, 568 P.2d 508 (1977). Only where special circumstances are shown to exist which render the matter a rare and exceptional case will this court, in its discretion, consider deviating from this settled rule. *See Sapienza v.*

position asserted by the petitioners and the rights of the defendant. Indeed, the trial had been concluded, and neither the defendant nor the people could in any way be prejudiced by allowing the petitioner or any other member of the public to have a copy of the charge." 163 N.Y.S.2d at 417, 143 N.E.2d at 262.

*Hayashi*, 57 Haw. 289, 554 P.2d 1131 (1976); *Gannett v. Richardson, supra*. On the basis of the facts presented to us in *Sapienza* we found the circuit court's order to be impermissibly overbroad and made the further finding that to allow the matter to rest until the appellate process had run its course "would not be in the public interest and would work upon the public irreparable harm." 57 Haw. at 294, 554 P.2d at 1135. In *Gannett* we invoked the supervisory power of this court over the lower courts of this jurisdiction to provide needed direction on a procedural and substantive matter of grave public concern.

The respondent Takao's order in this case was not impermissibly overbroad. Further, no irreparable harm to the petitioners or to the public has been shown. The order was not designed to prevent access to the transcript indefinitely. It was due to expire by its own terms once respondent Moyd's trial was concluded, the commencement of which was scheduled for May 1, 1978, but which we have been advised has been rescheduled for the middle of June, 1978. Moreover, the affidavit of Mary Adamski, reporter for one of the petitioners, reveals that she was present throughout the Moyd preliminary hearing before Judge Richardson. She candidly admits that "[she] took very few notes on the Moyd case since [she] did not intend to write a story about it." It was not until four days after the conclusion of the preliminary hearing that she decided to write a story about the proceedings. This decision was triggered by a public statement made by Women Against Rape chairperson Janice Arnold-Jones criticizing Judge Richardson's decision in the Moyd case.

We do not doubt the well-intentioned nature of the request for a transcript. In the words of reporter Adamski: "I felt the transcript was necessary as a balance for the actions and statements which had come forth from Women Against Rape in the meantime — including a March 5, 1978 rally at Iolani Grounds." But it was precisely the nature and effect of the publicity engendered by the actions of concerned Women Against Rape that raised grave doubts in respondent Takao's mind regarding the advisability of releasing the transcript at that point in time. The order was obviously designed to avert

the re-escalation of the controversy on the eve of trial. The complaint of Women Against Rape against Judge Richardson will be decided in another forum and ought not to be injected into the State's criminal prosecution of respondent Moyd.

Members of the public do have a right to be concerned — and it is their duty and responsibility to be concerned — about the growing incidence of crime within their midst. And they must be willing to voice their concern. At the same time, they must continually guard against the erosion of fundamental rights, prominent among which is the right to a fair trial. None, it has been said, is more fundamental than this right, see Estes v. Texas, 381 U.S. 532, 540 (1965), for it is the right to a fair trial guaranteed to one accused of crime "that guarantees all other freedoms, including freedom of speech and of the press, for without the right to a fair trial those freedoms would lack any means of vindication in the face of government oppression." Allegrezza v. Superior Court, 47 Cal.App.3d 948, 952, 121 Cal.Rptr. 245, 247 (1975). Both concerns are not necessarily in conflict, and certainly they ought not to be viewed as being irreconcilable.

The petition for the writs is denied.[2]

Jeffrey S. Portnoy for Honolulu Advertiser, Inc., petitioner.

David J. Dezzani for Gannett Pacific Corporation, petitioner.

Walter G. Chuck for Judge Frank T. Takao, respondent.

Roy Chang, Deputy Prosecuting Attorney for State of Hawaii, respondent.

---

[2] The petitioners also complain of the respondent district judge's refusal to allow them to participate in the determination of the defendant's motion to seal the transcript. In Gannett v. Richardson, supra, we held that a third party has no standing to intervene in a criminal prosecution. Cf. United States v. Gurney, supra.