106 P.3d 1096

**The ESTATE OF James CAMPBELL, Deceased.**

**No. 24430.**

Supreme Court of Hawai'i.

Feb. 18, 2005.

Evan R. Shirley, Honolulu and Gregory A. Ferren (Shirley & Associates), on the briefs, for Petitioners–Appellants KITV–4 and The Honolulu Star–Bulletin.

J. Thomas Van Winkle, Katherine G. Leonard, Joanne L. Grimes, and Jennifer S. Vicente (Carlsmith Ball LLP), Honolulu, on the briefs, for Respondents–Appellees The Trustees of the Estate of James Campbell.

MOON, C.J., LEVINSON, NAKAYAMA, and ACOBA, JJ. and Circuit Court Judge McKENNA, in place of DUFFY, J., Recused.

Opinion of the Court by ACOBA, J.

We hold that (1) the term "interested person" as defined in Hawai'i Revised Statutes (HRS) § 560:1–201 (Supp.2003) does not include a party interested solely in challenging a closure order in a probate proceeding;[1] (2) a common law presumption of judicial openness accompanies probate proceedings, which may be overcome only upon a showing of strong countervailing reasons that outweigh the public's presumptive right of access to court proceedings and records; (3) any person, including the media, is entitled to chal-

1. HRS § 560:1–201 provides that the term "[i]nterested person" includes heirs, devisees, children, spouses or reciprocal beneficiaries, creditors, beneficiaries, and any others having a property right in or claim against a trust estate or the estate of a decedent, ward, or protected person. It also includes persons having priority for appointment as personal representative, and other fiduciaries representing interested persons. The meaning as it relates to particular persons may vary from time to time and must be determined according to the particular purposes of, and matter involved in, any proceeding.

lenge petitions to close probate proceedings or seal probate records; and (4) a writ of prohibition is an appropriate vehicle for challenging a closure order in probate court.

In this regard, we affirm the June 27, 2001 order of the probate court of the first circuit[2] (the probate court) denying the "Petition to Intervene for Purpose of Asserting Claims in Equity No. 2388 to Open Judicial Proceedings and Court Records" of Petitioners–Appellants KITV–4 and the Honolulu Star–Bulletin (Appellants), but, in light of the history of this case, grant Appellants leave to file a petition for writ of prohibition.

## I.

The Estate of James Campbell (Equity No. 2388) came into existence upon the death of James Campbell on April 21, 1900, and is scheduled to terminate on January 20, 2007. The judicial proceedings and records related to Equity No. 2388 comprise seventy-four volumes of material dating back more than one hundred years, but appear to have been sealed on only three occasions prior to January 2000.[3]

Since early 1999, Respondents–Appellees Trustees of the Estate of James Campbell (Appellees) maintained a legal malpractice lawsuit against their former counsel, Ashford & Wriston, a Law Partnership (Ashford & Wriston). On September 22, 1999, the court in the malpractice action approved a stipulated protective order that essentially prohibited the parties from communicating material, designated as confidential by any party, to persons deemed unqualified under the order. On June 26, 2000, the defendant in the malpractice action sought to dismiss Appellees' third amended complaint for failure to obtain probate court approval to maintain the lawsuit.

Appellees then filed an emergency ex parte petition in probate court for authorization to maintain the malpractice action. On July 10, 2000, the probate court[4] granted the emergency ex parte petition, ordering that Appellees "were authorized to commence and are authorized to maintain, prospectively and retrospectively, the [malpractice action]."

On August 11, 2000, Appellees filed an ex parte petition in the probate court for *in camera* inspection of certain May 1, 1999 agreements[5] and to file related documents under seal.[6] On August 11, 2000, the court granted Appellees' ex parte petition for *in camera* inspection of the May 1, 1999 agreements and to file related documents under seal.[7]

On December 18, 2000, the probate court issued, under seal, findings of fact and conclusions of law. Appellees filed a petition for reconsideration, which was to be heard on March 16, 2001. On March 12, 2001, Appellees filed a petition for authorization to hold the March 16, 2001 hearing *in camera*.

Upon hearing of the petition to close the reconsideration hearing, Appellants filed a petition to intervene on March 16, 2001. Ap-

2. The Honorable Colleen Hirai presided.

3. In 1994, the first circuit court (the circuit court) sealed a report of the guardian ad litem on the 1992 and 1993 accounts. In 1996, the circuit court granted an ex-parte petition for order sealing confidential material because of sensitive and confidential material contained in a J.P. Morgan report. In 1999, the circuit court granted an emergency ex parte petition for vesting order and order sealing confidential material.

4. The Honorable Kevin S.C. Chang presided.

5. The "May 1, 1999 agreements" refers to two confidential agreements that "concern fees, potential conflicts of interest and confidentiality of information to be provided to beneficiaries' counsel." Appellees were apparently "willing to permit [the probate court] to examine such

agreements *in camera*," but did not want to provide the agreements to the defendant law firm.

6. In their petition for *in camera* inspection of the May 1, 1999 agreements, Appellees stated that "[b]ecause certain materials that will be filed with the Petition and any Responses or Objections thereto have been designated as 'confidential' pursuant to the Stipulated Protective Order ..., Petitioners [ (Appellees) ] request that all pleadings and exhibits be filed under seal to be consistent with such Order."

7. The August 11, 2000 order required that all pleadings be filed under seal, that the May 1, 1999 agreements were not to be filed with the petition for authorization to maintain the lawsuit or commence proceeding, and that the court would review the agreements *in camera*.

pellants sought to intervene in order to oppose Appellees' petition for *in camera* hearing and to request that the probate court deny Appellees' petition to close the courtroom. Appellants argued, *inter alia*, that

> [t]here is widespread public interest in the legal affairs of Campbell Estate. The public and media have a strong interest in insuring that the administration of justice by the Hawaii judiciary is open and accessible. There is a strong public interest in citizens of Hawaii being informed about the actions of courts and the competent and unbiased decision-making by Hawaii judges.

Appellants also attached for the probate court, as Exhibit A, their proposed memorandum in opposition to Appellees' petition to hold the March 16, 2001 hearing *in camera.* In the memorandum, Appellants argued that (1) the United States Supreme Court and this court have recognized the public's First Amendment and common law right of access for criminal cases, (2) the constitutional right of access has been applied to civil litigation, and (3) the requested closure is in derogation of the First Amendment and common law presumption of openness of the courts. Appellants also emphasized the "continuing and legitimate public interest in the Campbell Estate[,]" stating among its enumerated reasons that

> 5. The Campbell Estate is one of the wealthiest institutions in Hawaii with an estimated worth of $2 billion and is one of the major landholders in the state, owning approximately 79,000 [acres].

> 6. With the political and financial support of the City and County and state government of Hawaii, the Campbell Estate has developed the Kapolei area as the "Second City" of Oahu. It has been reported that the estimate of government funds allocated to the development of Kapolei stands at approximately $192 million.

> 7. The Campbell Estate and/or its trustees are significant contributors to the political campaigns of local, state and national candidates for public office.

> 8. The Campbell Estate plays a significant role in the political, economic and social lives of Hawaii residents.

As support for the policy of open judicial access, Appellants cited to this court's decisions in *Gannett Pacific Corp. v. Richardson,* 59 Haw. 224, 580 P.2d 49 (1978), and *Honolulu Advertiser, Inc. v. Takao,* 59 Haw. 237, 580 P.2d 58 (1978), cases establishing a common law presumption of openness in criminal cases. On April 16, 2001, Appellants filed a supplement to their March 16, 2001 petition, providing as an additional basis for intervention, a request to open prior sealed court documents.

On May 1, 2001, Appellees filed an objection to Appellants' petition to intervene, arguing, *inter alia,* that (1) no presumption of openness exists in the probate context; (2) Appellants have "no independent intervention right" under the Hawai'i Probate Rules (HPR) inasmuch as "no request by the parties" to adopt Hawai'i Rules of Civil Procedure (HRCP) Rule 24 [8] was made pursuant

---

**8.** HRCP Rule 24 pertaining to intervention, provides as follows:

> **(a) Intervention of right.** Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the *applicant's ability to protect that interest,* unless the applicant's interest is adequately represented by existing parties.
>
> **(b) Permissive intervention.** Upon timely application anyone may be permitted to intervene in an action: (1) when a statute confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main ac-

tion have a question of law or fact in common. When a party to an action relies for ground of claim or defense upon any statute, ordinance or executive order administered by an officer, agency or governmental organization of the State or a county, or upon any regulation, order, requirement or agreement issued or made pursuant to the statute, ordinance or executive order, the officer, agency or governmental organization upon timely application may be permitted to intervene in the action. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

> **(c) Procedure.** A person desiring to intervene shall serve a motion to intervene upon the parties as provided in Rule 5. The motion shall state the grounds therefor and shall be accom-

to HPR Rule 20(d); and (3) the "[s]ole [r]e-course for an [u]nduly [r]estrictive [c]losure [l]ies in a[p]etition for [w]rit of [p]rohibition." Appellees also asserted that "the historical presumption of openness, which is the lynch-pin of the common law right to access cases, is not applicable to equity proceedings" because "[h]istorically, courts of equity heard matters at or in chambers." Appellees also acknowledged *Richardson*, 59 Haw. at 235, 580 P.2d at 54, and argued that if Appellants believe that the probate court's "stated reasons for holding the hearing *in camera* are unduly restrictive, then at that point [Appellants] may petition the Hawaii Supreme Court for a writ of prohibition."

At the hearing on the petition to intervene, counsel for Appellants "address[ed] the notion that the remedy is by writ of mandamus or writ of prohibition as established under" *Richardson* and *Takao*. He noted that these decisions "predate by four years *Richmond Newspapers[, Inc. v. Virginia*, 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980) ], the seminal case, the self-described watershed case that established the right to be present—the public to be present in courtrooms." He then argued, however, that in more recent years, courts "have routinely, consistently, and uniformly applied intervention to permit the press and the public to assert their constitutional rights to open judicial access." Appellees also acknowledged the presumption of openness to the court, arguing "that the remedy for the media is not intervention; the remedy for the media is a writ of either mandamus or prohibition."

On May 18, 2001, the probate court orally denied Appellants' petition to intervene. In the probate court's June 27, 2001 "Order Denying KITV–4 and the Honolulu Star Bulletin's Petition to Intervene for Purposes of Asserting Claims in Equity No. 2388 to Open Judicial Proceedings and Court Records Filed March 16, 2001," the court stated as follows:

1. *Petitioners are not "interested persons" as defined in [HRS] § 560:1–201.*[9]

2. *Even if [HRCP Rule] 24 were to apply to the Petition pursuant to [HPR Rule] 20(d), Petitioners have not met the requirements for intervention* thereunder for the following reasons:

a. With respect to intervention of right under HRCP 24(a):

(1) Petitioners have not cited a statute conferring on them an unconditional right to intervene and therefore are not entitled to intervene under HRCP 24(a)(1); and

(2) *Petitioners have not demonstrated an interest relating to the property or transaction which is the subject of this action* and, on this basis alone, are *therefore not entitled to intervene under HRCP 24(a)(2).*

b. With respect to permissive intervention under HRCP 24(b):

(1) Petitioners have not cited a statute conferring upon them a conditional right to intervene and therefore are not entitled to intervene under HRCP 24(b)(1);

(2) Petitioners *have not demonstrated that their claims and the main action have a question of law or fact in common and therefore are not entitled to intervene under HRCP 24(b)(2);* and

(3) this [c]ourt exercises its discretion to deny permissive intervention under HRCP 24(b)(2).

(Emphases added.)

On May 25, 2001, Appellees filed a petition for settlement approval and to exclude the press and public from the hearing. On July 9, 2001, Appellees filed an ex parte petition to advance the hearing on the petition for *in camera* hearing. Under seal, the probate court approved the ex parte petition and scheduled a hearing without publicly disclosing the date and time.

Apparently related to Appellees' argument with respect to the appropriate remedy under *Richardson* and *Takao*, on July 12, 2001, Appellants filed a petition in this court for writ of mandamus directed to the probate court, requesting that this court (1) vacate

---

panied by a pleading setting forth the claim or defense for which intervention is sought. The same procedure shall be followed when a statute gives a right to intervene.

9. *See supra* note 1.

the June 27, 2001 order denying intervention and to enter an order granting the petition to intervene, (2) "ensure that the public and the press are given open access to judicial proceedings and court records and orders unless there is compliance with exacting legal standards," and (3) "vacate the blanket secrecy orders heretofore entered by the [probate court] in Equity No. 2388 because they *were issued without regard to the 'presumption of openness'* and in violation of the First Amendment and the common law." (Emphasis added.)

However, on July 20, 2001, this court denied the petition on the basis that "[a] petition for a writ of mandamus is not intended to take the place of an appeal." The order was *issued "without prejudice to any remedy [Appellants] may have by way of appeal."* (Emphasis added.) That same day, Appellants filed a notice of appeal from the June 27, 2001 order. On July 30, 2001, Appellants filed a motion for reconsideration of the order denying the petition for writ of mandamus. On September 13, 2001, a majority of this court denied the motion "without prejudice to [Appellants] raising any arguments or seeking any relief in their pending appeal." [10]

## II.

On appeal, Appellants argue that "filing a motion to intervene is simply recognized as an appropriate means of raising assertions of public rights of access to information regarding matters in litigation." Appellees, on the other hand, argue that neither appellant is an "interested person" as defined in HRS § 560:1–201. In addition, Appellees argue that according to HPR Rule 20(d),[11] HRCP

Rule 24 does not necessarily apply to probate proceedings; but assuming *arguendo* HRCP Rule 24 does apply, neither appellant meets the requirements for intervention of right under HRCP Rule 24(a) or permissive intervention under Rule 24(b).

## III.

Whether Appellants constitute "interested persons" as defined in HRS § 560:1–201 is a matter of statutory interpretation and therefore a question of law subject to *de novo* review. *Ing v. Acceptance Ins. Co.*, 76 Hawai'i 266, 874 P.2d 1091 (1994). As oft-stated, "our primary duty [when interpreting statutes] is to ascertain and give effect to the intention of the legislature, which is obtained primarily from the language of the statute itself." *Id.* at 270, 874 P.2d at 1095. We have also noted on several occasions that "where the language of the statute is plain and unambiguous, our only duty is to give effect to its plain and obvious meaning." *Id.* (citing *AIG Hawaii Ins. Co. v. Estate of Caraang*, 74 Haw. 620, 634, 851 P.2d 321, 328 (1993)).

In this case, the language of the relevant statutes is plain and unambiguous. According to HRS § 560:7–201(a) (1993), "[t]he [probate] court has jurisdiction of proceedings initiated by trustees and *interested persons* concerning the internal affairs of trusts." [12] (Emphasis added.) Under the "interested person" definition in HRS § 560:1–201,[13] Appellants neither are, nor do they contend to be, trustees, heirs, devisees, children, spouses or reciprocal beneficiaries, creditors, or beneficiaries. Appellants, how-

---

10. In their answering brief, Appellees acknowledge that the "dissenting Justices appeared willing to have treated the Petition for Writ of Mandamus as one for Writ of Prohibition, and would have been inclined to remand the case. Order filed in [S.Ct. No. 24403] on September 13, 2001, at 2, 7."

11. HPR Rule 20(d) states as follows:

    **(d) Procedures in Retained Contested Matters.** Whenever the court retains jurisdiction of a contested matter as a probate proceeding, the court in the order of assignment may, at the request of the parties, designate and order that any one or more of the Hawai'i Rules of

Civil Procedure and/or the Rules of the Circuit Courts shall be applicable in such matter.

12. "Interested person" status is only one means by which to become a party to a probate proceeding. Probate court jurisdiction extends beyond "proceedings initiated by trustees and interested persons," HRS § 560:7–201, and includes third-party proceedings, HRS § 560:7–204 (1993). HRS § 560:7–204 grants the probate court "concurrent jurisdiction with other courts of this State ... of *other actions and proceedings involving trustees and third parties.*" (Emphasis added.)

13. *See supra* note 1.

ever, contend that they are "interested persons" because they have a "claim" against Appellees. They argue that "[w]hen [Appellees] sought to close the courtroom and exclude the public and the press, Appellants had a claim against [Appellees]."

HRS § 560:1–201 defines "[c]laims" as *"liabilities of* the decedent or protected person, whether arising in contract, in tort, or otherwise, and *liabilities of* the estate which arise at or after the death of the decedent or after the appointment of a conservator, including funeral expenses and expenses of administration." (Emphases added.) Under HRS § 1–14 (1993), "words of law are generally to be understood in their most known and usual signification, without attending so much to literal and strictly grammatical construction of the words as to their general or popular use or meaning." In ordinary parlance, then, "liability" is defined as

> *an amount that is owed whether payable in money, other property, or services* … [or] an *obligation or duty* which is owed by one person to another to refrain from some course of conduct injurious to the latter or to perform some act or to do something for the benefit of the latter and for breach of which the law gives a remedy to the latter … [;] *accountability and responsibility* to another enforceable by legal civil or criminal sanctions.

*Webster's Third New Int'l Dictionary* 1302 (1961) (emphases added). Applying a common construction to HRS § 560:1–201, Appellants do not have a "claim" against Appellees inasmuch as Appellees' petition to exclude the public and press from the courtroom did not create a liability, *i.e.,* an amount owed, an obligation or duty, accountability and responsibility, flowing from Appellees to Appellants.

Appellants also rely upon the final sentence in the definition of "interested person" to argue that the definition is "sufficiently broad-gauged to support" intervention. The final sentence of the definition states that "[t]he meaning [of 'interested person'] as it relates to particular persons *may vary from*

*time to time and must be determined according to the particular purposes of, and matter involved in, any proceeding."* [14]. HRS § 560:1–201 (emphasis added). However, the language that Appellants rely upon has been construed as having a more limited meaning of referring to one with an interest in the estate. The last sentence of the definition

> does not broaden the definitional reach of "interested person[."] Rather it allows the court to determine the sufficiency of a party's interest relative to the particular probate proceeding. It is thus possible that one may be an "interested person" for the purpose of one particular probate proceeding but not another…. *An interested person, however, will always possess an interest in the estate itself.*

*Estate of Thorne,* 704 A.2d 315, 318 (Me. 1997) (citation omitted) (emphasis added). *See In re Estate of Juppier,* 81 S.W.3d 699, 701 (Mo.Ct.App.2002) (limiting "interested person" to "only include those with 'a financial interest in an estate' "). Appellants do not "possess an interest in the estate itself[,]" *Estate of Thorne,* 704 A.2d· at 318, and, hence, do not appear to be "interested persons" within the meaning of HRS § 560:1–201. Thus, the court was correct to deny Appellants' petition to intervene as "interested persons."

## IV.

In the alternative, Appellants contend they should have been permitted to intervene under HRCP Rule 24. They argue that although Rule 24 "does not fit neatly," several federal circuits have held that Federal Rules of Civil Procedure (FRCP) Rule 24, the federal counterpart to HRCP Rule 24, is "an appropriate means of raising assertions of public rights of access to information regarding matters in litigation."

Appellees argue that the applicability of the rules of civil procedure to this proceeding is governed by HPR Rule 20(d). That rule provides that "[w]henever the court retains jurisdiction of a contested matter[ [15] ] as a

**14.** " 'Proceeding' includes action at law and suit in equity." HRS § 560:1–201.

**15.** HPR Rule 19 defines "contested matter" as

probate proceeding, the court in the order of assignment may, at the request of the parties, designate and order that any one or more of the Hawaii Rules of Civil Procedure and/or the Rules of the Circuit Courts shall be applicable in such matter." Appellees maintain that no party requested that the HRCP apply to the probate proceeding.[16]

In this case, the court's June 27, 2001 order does not indicate that it decided that HPR Rule 20(d) applied or not, but the probate court appears to have determined that assuming (*i.e.*, "[e]ven if," as stated by the court) the Hawai'i Rules of Civil Procedure were to apply, Petitioners would not meet the requirements for intervention under HRCP Rule 24(a) and (b).

## V.

■■ An order denying an application for intervention as of right under HRCP Rule 24(a)(2) is an appealable final order under HRS § 641–1(a),[17] *Baehr v. Miike*, 80 Hawai'i 341, 343–45, 910 P.2d 112, 114–16 (1996), and is reviewable under the right/wrong standard, *Kim v. H.V. Corp.*, 5 Haw.App. 298, 301, 688 P.2d 1158, 1160 (1984). As enunciated in *Ing*, 76 Hawai'i at 271, 874 P.2d at 1096, this court considers four factors in determining intervention pursuant to HRCP Rule 24(a)(2), including (1) whether the application was timely; (2) whether the intervenor

claimed an interest relating to the property or transaction which was the subject of the action; (3) whether the disposition of the action would, as a practical matter, impair or impede the intervenor's ability to protect that interest; and (4) whether the intervenor's interest was inadequately represented by the existing defendants. *See Hoopai v. Civil Service Comm'n*, 106 Hawai'i 205, 216, 103 P.3d 365, 376 (2004) (internal quotation marks omitted).

■ The probate court denied intervention under HRCP Rule 24(a)(2) on the basis that Appellants failed to meet the second factor of the *Ing* analysis.[18] In order to satisfy the second factor, Appellants must "claim an *interest relating to the property or transaction* which [is] the subject of the action." *Id.* Appellants argue that their First Amendment rights, their rights under Section 4 of the Hawai'i State Constitution, and their rights under the common law constitute an "interest" related to Equity No. 2388. The interest to which Appellants refer is the public's and the media's interest in preserving the common law presumption of openness in judicial proceedings. As discussed in the preceding analysis on "interested persons," Appellants do not have an interest in the subject of the action, Equity No. 2388. Thus, the court did not err in denying intervention as of right.

---

any one in which an objection has been filed. The contested matter shall be limited to facts and issues in dispute, and shall not affect other issues or pleadings before the court with respect to the same proceeding that are not in dispute, provided that no party is prejudiced thereby.

16. The prerequisites of HPR Rule 20(d) apparently were not satisfied in this case in that there is no order of assignment in which the court "may, at the request of the parties designate and order that any one or more of the Hawai'i Rules of Civil Procedure and/or the Rules of the Circuit Courts shall be applicable in such matter." HPR 20(d). Pursuant to Rule 20(a), the probate "court *by written order* may retain a contested matter on the regular probate calendar or may assign the contested matter to the civil trials calendar of the circuit court." (Emphasis added.) This provision "divides contested matters into two classes: those that the probate court will resolve and those that the court will refer to the civil trials calendar." HPR 20(a) cmt. "By requiring a written order of assignment, ... a

clear record is created, and the court then has the opportunity to decide what procedures will be used if the contested matter is retained." HPR 20(a) cmt. However, no order of assignment appears to have been created.

17. HRS § 641–1(a) provides that "[a]ppeals shall be allowed in civil matters from all final judgments, orders, or decrees of circuit and district courts and the land court, to the supreme court or to the intermediate appellate court, except as otherwise provided by law and subject to the authority of the intermediate appellate court to certify reassignment of a matter directly to the supreme court and subject to the authority of the supreme court to reassign a matter to itself from the intermediate appellate court."

18. As indicated, the probate court's June 27, 2001 order stated that "Petitioners have not demonstrated an interest relating to the property or transaction which is the subject of this action and, on this basis alone, are therefore not entitled to intervene under HRCP 24(a)(2)."

■ Denial of permissive intervention pursuant to HRCP Rule 24(b)(2) "is a matter within the discretion of the court below and will be interfered with on appeal only when there has been an abuse of discretion." *Amfac Fin. Corp. v. Shin,* 2 Haw.App. 428, 433, 633 P.2d 1125, 1129 (1981) (citation omitted). An abuse of discretion occurs when the trial court "exceeds the bounds of reason or disregards rules or principles of law or practice to the substantial detriment of a party." *Kawamata Farms, Inc. v. United Agri Products,* 86 Hawai'i 214, 241, 948 P.2d 1055, 1082 (1997). Thus, although "the trial court's discretion under Rule 24(b)(2) is very broad[,]" *Baehr,* 80 Hawai'i at 345, 910 P.2d at 116 (citation and brackets omitted), we may overturn the probate court's denial of intervention under HRCP Rule 24(b)(2) if we conclude that it has disregarded legal principles to the substantial detriment of Appellants. *Cf. Pansy v. Stroudsburg,* 23 F.3d 772, 777 (3d Cir.1994) (noting that the court normally reviews a denial of intervention for abuse of discretion, but exercising plenary review over the question as to whether the district court applied the correct legal standard for intervention); *Beckman Indus., Inc. v. Int'l Ins. Co.,* 966 F.2d 470, 472 (9th Cir.1992) (applying *de novo* review to the legal question "concerning the coverage and interpretation" of permissive intervention under FRCP Rule 24(b) even though the decision to grant permissive intervention is reviewed for abuse of discretion).

■ The probate court denied permissive intervention on the basis that Appellants failed to demonstrate "that their claims and the main action have a question of law or fact in common" under HRCP Rule 24(b)(2). Appellants' sole purpose for filing their petition to intervene was to assert the public right of access to judicial proceedings and records. This "claim" is entirely independent of the legal issues involved in Appellees' petition for reconsideration of the probate court's authorization decision. Likewise, the facts underlying the intervention petition and the facts in the malpractice lawsuit are also mutually exclusive. Thus, under a strict application of the commonality requirement of HRCP Rule 24(b)(2), Appellants were not entitled to intervene.

## VI.

We note, however, that the federal courts have held that permissive intervention via FRCP Rule 24(b) is an appropriate mechanism for asserting the right of access to judicial proceedings and records. The federal circuits acknowledge the "presumptive right [of] access" to court proceedings and documents. *Jessup v. Luther,* 227 F.3d 993, 999 (7th Cir.2000). *See e.g. Meyer Goldberg, Inc. of Lorain v. Fisher Foods, Inc.,* 823 F.2d 159, 163 (6th Cir.1987) (reaffirming the "long-established legal tradition" that "both civil and criminal trials are presumptively open proceedings and open records are fundamental to our system of law" (citations omitted)); *Equal Employment Opportunity Comm'n v. Nat'l Children's Ctr.,* 146 F.3d 1042, 1046 (D.C.Cir.1998) (observing the "longstanding tradition of public access to court records" (citation omitted)).

Thus federal decisions have allowed claims of right of access to be brought under FRCP Rule 24(b). *Jessup,* 227 F.3d at 997 (noting that "every court of appeals . . . has come to the conclusion that Rule 24 is sufficiently broad-gauged to support a request of intervention for the purposes of challenging confidentiality orders"); *Pansy,* 23 F.3d at 778 (holding that "[b]y virtue of the fact that the Newspapers challenge the validity of the Order of Confidentiality entered in the main action, they meet the requirement of [FRCP Rule] 24(b)(2) that their claim must have a 'question of law or fact in common' with the main action"); *Meyer Goldberg, Inc.,* 823 F.2d at 162 (reaffirming that permissive intervention under FRCP Rule 24(b) is the "proper method to challenge a protective order by limited intervention for discovery purposes"); *Beckman Indus.,* 966 F.2d at 473 (joining other circuits "in recognizing that Rule 24(b) permits limited intervention for the purpose of challenging a protective order"); *Nat'l Children's Ctr.,* 146 F.3d at 1046 (holding that "third parties may be allowed to permissively intervene under Rule 24(b) for the limited purpose of seeking access to materials that have been shielded from public view either by seal or by a protective order");

*Public Citizen v. Liggett Group, Inc.,* 858 F.2d 775, 783 (1st Cir.1988) (holding that "where intervention is available (*i.e.* civil cases), it is an effective mechanism for third-party claims of access to information generated through judicial proceedings").

In doing so, these courts have relaxed their application of the "question of law or fact in common" requirement for permissive intervention, explaining that "although there is ample justification for the common fact or law requirement when the proposed intervenors seek to become a party to the action, 'there is no reason to require such a strong nexus of fact or law when a party seeks to intervene only for the purpose of modifying a protective order.' " *Jessup,* 227 F.3d at 997 (quoting *Beckman Indus.,* 966 F.2d at 474) (brackets omitted). The Tennessee Supreme Court has held that "by virtue of the fact that the media entities challenge the validity of the protective order entered in the main action, they meet the requirement ... that their claim have a 'question of law or fact in common' with the main action." *Ballard v. Herzke,* 924 S.W.2d 652, 657 (Tenn.1996). However, Appellants would not technically meet the requirements of HRCP Rule 24. In light of the acknowledgment among the aforesaid jurisdictions of "the lack of a clear fit with the literal terms of Rule 24(b)," *Nat'l Children's Ctr.,* 146 F.3d at 1045, we cannot say that the probate court abused its discretion in its view of the applicability of HRCP Rule 24.

## VII.

Nevertheless, our jurisdiction also has a long-established "policy of openness in judicial proceedings." *Richardson,* 59 Haw. at 233, 580 P.2d at 56.[19] This court has observed that "free access to our courtrooms is essential to [the] proper understanding of the nature and quality of the judicial process." *Id.* at 230, 580 P.2d at 55. As explained in *Richardson,*

> [t]he reasons underlying the policy of open and public administration of justice are clear and compelling. Because of our nat-

ural suspicion and traditional aversion as a people to secret proceedings, suggestions of unfairness, discrimination, undue leniency, favoritism, and incompetence are more easily entertained when access by the public to judicial proceedings are unduly restricted. Secrecy of judicial action can only breed ignorance and distrust of courts and suspicion concerning the competence and impartiality of judges. Thus, the openness which serves as a safeguard against attempts to employ our courts as instruments of persecution also serves to enhance public trust and confidence in the integrity of the judicial process. Such trust and confidence is a vital ingredient in the administration of justice under our system of jurisprudence.

*Id.*

■ Although we have never expressly held that probate proceedings are accompanied by a presumption of openness, the reasons underlying openness in the criminal context, as enunciated in *Richardson,* are equally compelling in the civil context, including probate proceedings. Indeed, many other jurisdictions have extended the presumption of openness to civil and probate proceedings. *See e.g., Copley Press, Inc. v. Superior Court,* 63 Cal.App.4th 367, 74 Cal. Rptr.2d 69, 74 (1998) (stating that "[p]robate proceedings ... are not closed proceedings"); *Gannett Co. v. DePasquale,* 443 U.S. 368, 386–87 n. 15, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979) (noting that "many of the advantages of public criminal trials are equally applicable in the civil trial context"); *Brown & Williamson Tobacco Corp. v. Federal Trade Comm'n,* 710 F.2d 1165, 1179 (6th Cir.1983) (stating that "[t]he policy considerations discussed in *Richmond Newspapers* apply to civil as well as criminal cases" and that "[c]ivil cases frequently involve issues crucial to the public—for example, discrimination, voting rights, antitrust issues, government regulation, bankruptcy, etc."); *Holland v. Eads,* 614 So.2d 1012, 1015–16 (Ala. 1993) (holding that "the common law presumption in favor of the public's right of

---

**19.** Likewise, the Supreme Court has concluded that "a presumption of openness inheres in the very nature of a criminal trial under the Nation's system of justice." *Richmond Newspapers, Inc.,* 448 U.S. at 573, 100 S.Ct. 2814.

access to judicial records" requires a hearing whenever a motion to seal is filed); *Courier-Journal & Louisville Times Co. v. Peers,* 747 S.W.2d 125, 129 (Ky.1988) (declining to characterize the "right of access to court records in a civil case" as a common law or constitutionally protected right, but recognizing "the fundamental right of the news media to a hearing to decide whether the hearing should be closed or the record sealed from access to the public and the media").

In addition, this court has emphasized the importance of public access to judicial records as well, observing that "the public ... generally ha[s] the right, established by the common law, to inspect and copy public records and documents, including judicial records[.]" *Takao,* 59 Haw. at 239, 580 P.2d at 61. As part of the probate code, HRS § 560:1–305 (Supp.2001) provides that

> [t]he clerk of the court shall keep a record for each decedent, ward, protected person or trust involved in any document which may be filed with the court under [chapter 560], including petitions and applications, demands for notices or bonds, trust registrations, and of any orders or responses relating thereto by the registrar or court, and establish and maintain a system for indexing, filing, or recording which is sufficient to enable users of the records to obtain adequate information.

(Emphases added.) Thus, inasmuch as the clerk of the probate court must "keep a record for each ... trust" and "maintain a system for indexing, filing or recording which is sufficient to enable users of the records to obtain adequate information [,]" it would appear that probate records are "public records." Other jurisdictions have so held. *See e.g., Copley Press,* 74 Cal.Rptr.2d at 74 (noting that "[n]o statute exempts probate files from the status of public records"); *In re*

*Estates of Zimmer,* 151 Wis.2d 122, 442 N.W.2d 578, 582 (Ct.App.1989) (recognizing that "a presumption of complete public access" applies to probate records); *Prescott Publ'g Co. v. Register of Probate for Norfolk County,* 395 Mass. 274, 479 N.E.2d 658, 663 (1985) (holding that automatic closure of financial statements in a divorce proceeding pursuant to a probate court rule may be challenged and "is only justifiable on a showing of overriding necessity").

## VIII.

Because the right of access to judicial proceedings and records is embedded in our common law policy of judicial openness, a party must be afforded the concomitant right to challenge motions or petitions to close court proceedings or seal court records. *See Jessup,* 227 F.3d at 997 (holding that "in order to preserve the right of access, those who seek access to sealed material have a right to be heard in a manner that gives full protection to the asserted right" (citation, brackets, and internal quotation marks omitted)).

In this regard, the probate code provides that "[u]nless displaced by the particular provisions of this chapter, *the principles of law and equity supplement its provisions.*" HRS § 560:1–103 (Supp.2001) (emphasis added). No "particular provision" in HRS chapter 560 displaces a right of access to probate proceedings and records. As discussed previously, we have confirmed in our common law, a right of public access to judicial proceedings and records as a fundamental principle of law. *See Richardson,* 59 Haw. at 233, 580 P.2d at 56; *Takao,* 59 Haw. at 239, 580 P.2d at 61. Inasmuch as probate proceedings and records are "judicial" in nature, we conclude that this principle of law supplements the provisions of the probate code.[20]

**20.** Other jurisdictions have relied upon the "principles of law and equity" provision of their respective probate codes to apply common law and equitable principles to probate matters. *See Riddell v. Edwards,* 76 P.3d 847, 855 (Alaska 2003) (recognizing that the "principles of law and equity" provision "generally gives trial courts broad latitude to supplement statutory provisions with equitable principles"); *In re Estate of O'Keefe,* 583 N.W.2d 138, 140 (S.D.1998) (relying upon the law and equity provision to

reject the contention that in enacting the UPC, the South Dakota legislature intended to foreclose the equitable power of courts); *Guardianship of Lander,* 697 A.2d 1298, 1299–1300 (Me. 1997) (concluding that the general rule placing the burden of proof on petitioners and other moving parties to prove the facts they allege prevails in an appointment proceeding); *Lunsford v. Western States Life Ins.,* 908 P.2d 79, 87–90 (Colo.1995) (applying Colorado common law that killers cannot receive life insurance pro-

We hold, then, that third parties have a right to file petitions challenging the closure of probate court proceedings or the sealing of court records [21] under a principle of law supplementing the probate code.

## IX.

Other jurisdictions have engaged in a balancing of interests in determining whether a closure order was justified. *See Peers,* 747 S.W.2d at 130 (recognizing "a limited right [of access] which can be foreclosed if the litigants' rights of privacy outweigh the public's right to know"); *Holland,* 614 So.2d at 1016 (concluding that the "presumption . . . of openness . . . can be overcome only by clear and convincing evidence that an individual's privacy interests . . . rises above the public interest in access"). A California case, *In re Estate of Hearst,* 67 Cal.App.3d 777, 136 Cal.Rptr. 821 (1977), is somewhat analogous to the instant action and therefore instructive. In that case, the trustees administering the will of William Randolph Hearst "secured orders from the probate court . . . cutting off public access to and sealing the probate files." *Id.* at 822. The Hearst trustees sought sealing orders because "members of the Hearst family . . . would be in grave danger of their lives and property if their identities were discovered through use of the probate files." [22] *Id.* at 822–23. Upon further petition by the trustees to seal files, the court vacated its prior orders, believing "it had no authority to seal a[p]robate file and bar the public access thereto absent a statute granting such power." *Id.* at 822 (internal

quotation marks omitted). The court then stayed its vacation to allow the trustees to appeal. *Id.* Members of the press sought mandamus from the California appellate court to "annul the probate court's stay and thereby open the probate file in Estate of Hearst to public inspection." *Id.*

In addressing the petition for mandate, the California court began by noting that no statute specifically places probate records outside the realm of "public records." *Id.* at 824. In other words, the common law was unencumbered by legislative mandate in this area of the law. Next, the court noted that by establishing a trust that required supervision by state courts, Hearst should have known that courts maintain their legitimacy through transparency.[23] The court explained that "when individuals employ the public powers of state courts to accomplish private ends, such as the establishment and supervision of long-term testamentary trusts, they do so in full knowledge of the possibly disadvantageous circumstance that the documents and records filed in the trust will be open to public inspection." [24] *Id.* at 824. Without public access to probate files or proceedings, the court reasoned, "it becomes impossible to expose corruption, incompetence, inefficiency, prejudice, and favoritism." *Id.* at 824. The court said that "[a]bsent strong countervailing reasons, the public has a legitimate interest and right of general access to court records, one of special importance when probate involves a large estate with on-going long-term trusts which reputedly administer and control a major publishing empire." [25] *Id.* at 825.

ceeds from their victims where the slayer statute was inapplicable and no other applicable statutes existed).

**21.** The court's authority to hold such hearings would stem from its "full power to make orders, judgments and decrees and take all other action necessary and proper to administer justice in the matters which come before it." HRS § 560:1–302(b) (Supp.2001).

**22.** The Hearst family had become the target of "numerous bombings [and] threats to the lives of family members," including the notorious kidnaping of Patricia Hearst. 136 Cal.Rptr. at 823.

**23.** According to the court, Hearst could avoid exposure through the use of "private arrangements such as [i]nter vivos gifts, joint tenancies,

and so-called 'living' or grantor trusts." 136 Cal.Rptr. at 824.

**24.** The court stated,

[w]hen the parties perceive advantages in obtaining continuing court supervision over their affairs, thereby projecting their wishes beyond the span of their individual lives and securing court protection for the beneficiaries of their testamentary plans, in a sense they take the good with the bad, knowing that with public protection comes public knowledge of the activities, assets, and beneficiaries of the trust. 136 Cal.Rptr. at 824.

**25.** The California court of appeals reaffirmed the *Hearst* test in *Copley Press,* 74 Cal.Rptr.2d at 74, holding that "[a]lthough a court is not powerless

We believe the balancing approach to be a salutary one. This court has adopted a similar balancing approach in the criminal context, noting, in *Richardson*, that there will be situations where the "right of the public to know must yield to the overriding requirements of due process." 59 Haw. at 230, 580 P.2d at 55. *See id.* at 233, 580 P.2d at 56–57 ("reaffirming this jurisdiction's policy of openness in judicial proceedings," but holding that if "there is a substantial likelihood that an open hearing ... would interfere with the defendant's right to a fair trial by an impartial jury, a departure from this policy will be justified"); *see also Takao*, 59 Haw. at 240–41, 580 P.2d at 61–62 (affirming the lower court's ruling that "the right of the press and public to access to public records is not unqualified and that must be weighed against the right of defendant to a fair trial"). We hold, then, that the presumption of openness requires the estate to demonstrate that strong countervailing reasons weigh against

the public's presumptive right of general access to judicial proceedings and records.[26]

## X.

The power to enforce the presumption of openness resides with this court under HRS § 602–4,[27] as authorized by *Richardson*, 59 Haw. 224, 580 P.2d 49, and under HRS § 602–5(7),[28] which sanctions the making of orders to promote justice in matters pending before us.[29] In *Richardson*, this court identified the closure of criminal court proceedings as constituting that species of "rare and exigent circumstances," *id.* at 227, 580 P.2d at 53, that "warrant the exercise of this court's supervisory jurisdiction over the lower courts" under HRS § 602–4, *id.* at 226–27, 580 P.2d at 53, "as well as the exercise of [this] court's discretionary power to issue its writ of prohibition" under HRS § 602–5, *id.* at 227, 580 P.2d at 53. We note, as argued below by Appellees,[30] that a writ of prohibition would appear to be germane. The writ

to seal portions of its records to protect litigants, it may do so only in exceptional circumstances upon a showing of compelling reasons."

26. We express no opinion as to the applicability of the balancing test in situations where a specific statute or rule mandates confidentiality or where such an approach may be inappropriate, as might be the case, for example, in certain family court matters. The balancing approach should be applied on a case-by-case basis. *Cf. Globe Newspaper Co. v. Superior Court for the County of Norfolk*, 457 U.S. 596, 609, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982) (striking a statute providing for mandatory exclusion of the press and public during testimony of a minor victim in a sex-offense trial as unconstitutional where the state's interests "could be served just as well by requiring the trial court to determine on a case-by-case basis whether the State's legitimate concern for the well-being of a minor necessitates closure").

Additionally, inasmuch as our policy of judicial openness is rooted in the common law, *see Takao*, 59 Haw. at 239, 580 P.2d at 61 (concluding that the "public does generally have the right, established by the common law, to inspect and copy public records and documents, including judicial records"), we need not reach the issue of whether the right of access is also protected under both the federal and our state constitutions. We note, however, that the Supreme Court of California, in *NBC Subsidiary, Inc. v. Superior Court of Los Angeles County*, 20 Cal.4th 1178, 86 Cal.Rptr.2d 778, 980 P.2d 337, 371 (1999), a decision subsequent to *Hearst*, has determined that "the First Amendment provides a

right of access to ordinary civil trials and proceedings." The California court addressed the constitutional issue in order to properly construe a statute that required "the sittings of every court [to] be public." *Id.* 86 Cal.Rptr.2d 778, 980 P.2d at 350.

27. HRS § 602–4 (1993) provides that "[t]he supreme court shall have the general superintendence of all courts of inferior jurisdiction to prevent and correct errors and abuses therein where no other remedy is expressly provided by law."

28. HRS § 602–5(7) (1993) confers upon the supreme court jurisdiction

[t]o make and award such judgments, decrees, orders and mandates, issue such executions and other processes, and do such other acts and take such other steps as may be necessary to carry into full effect the powers which are or shall be given to it by law or for the promotion of justice in matters pending before it.

29. This court also has the power to "exercise original jurisdiction in all questions arising under writs directed to courts of inferior jurisdiction and returnable before the supreme court[.]" HRS § 602–5(4).

30. At the May 11, 2001 hearing on Appellants' petition to intervene, counsel for Appellees stated, "Now, this doesn't mean that the media has no recourse.... [T]he remedy for the media is a writ of either mandamus or prohibition."

of prohibition, prohibiting a court from enforcing its order, directly addresses the remedy sought by Appellants and is, therefore, preferable to the writ of mandamus.

While this court did, by its July 20, 2001 order, deny Appellants' petition for writ of mandamus and deny reconsideration of that order in its September 13, 2001 order, the July 20, 2001 order did note that this court "has previously reviewed a lower court's denial of access to court records by way of writ of mandamus or prohibition[.]"

Thus, in hindsight, it appears that a petition for writ of prohibition would have been germane to this case.[31] Accordingly, leave is granted Appellants to file such a writ. In the event Appellants do so, would-be respondents, the Honorable Colleen Hirai, Appellees, and Ashford & Wriston, may answer Appellants' petition pursuant to HRAP Rule 21(c).[32]

### XI.

For the foregoing reasons, we affirm the June 27, 2001 order denying Appellants intervention as "interested persons" under the probate code and intervention pursuant to HRCP Rule 24, but grant Appellants leave to file a petition for writ of prohibition.

---

**31.** This court has re-characterized petitions for extraordinary writs due to the nature of the claim involved or the relief granted. *See e.g., In re John Doe*, 67 Haw. 466, 469, 691 P.2d 1163, 1165 (1984); *State ex rel Marsland v. Town*, 66 Haw. 516, 523, 668 P.2d 25, 29–30 (1983).

**32.** HRAP Rule 21(c) (2001) states, in pertinent part, as follows:
    If the court to which the petition is assigned is of the opinion that the writ should not be entertained, it shall deny the petition. Other-

wise, it shall order that an answer to the petition be filed by the respondents within the time fixed by the order.... All parties other than the petitioners shall be deemed respondents for all purposes.... If the judge named respondent does not desire to appear in a proceeding, the judge may advise the appellate clerk and all parties by letter, but the petition shall not thereby be taken as admitted.... The proceeding shall be given preference over ordinary civil cases.