FOR PUBLICATION IN WEST'S HAWAI‘I REPORTS AND PACIFIC REPORTER

Electronically Filed
Intermediate Court of Appeals
CAAP-18-0000613
23-JAN-2023
08:09 AM
Dkt. 143 OP

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI‘I

---o0o---

STEPHEN KEAWE ROY and REBECCA ROY,
Plaintiffs-Appellees,
v.
GOVERNMENT EMPLOYEES INSURANCE CO.,
GEICO INSURANCE AGENCY, INC., Defendants-Appellants
and
TIMOTHY DAYTON, RICHARD DWYER, and JOHN DORNAN,
Defendants-Appellees,
and
DOE ENTITIES 1-10, Defendants

NO. CAAP-18-0000613

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 13-1-2053-07 (KKH))

JANUARY 23, 2023

GINOZA, C.J., AND LEONARD AND WADSWORTH, JJ.

OPINION OF THE COURT BY WADSWORTH, J.

In 2013, Plaintiffs-Appellees Stephen Keawe Roy (**Roy**) and Rebecca Roy (collectively, **the Roys**) sued Defendants-Appellants Government Employees Insurance Co. and GEICO Insurance Agency, Inc. (collectively, **GEICO**), as well as certain individuals, for alleged violations of the Hawai‘i Whistle Blowers' Protection Act and other purported wrongdoing. The

parties settled the case, and in January 2014, the Circuit Court of the First Circuit (**Circuit Court**) entered an order approving the parties' stipulation to seal the court's case file (**Sealing Order**).[1] The case was dismissed with prejudice. In May 2018, Ed Wagner (**Wagner**), a GEICO policyholder who was not a party to the underlying case, filed a motion to unseal the case records. The Circuit Court granted the motion and subsequently denied GEICO's motion to reseal portions of the records.[2]

GEICO appeals from the July 6, 2018 "Order on Motion to Unseal (Filed May 22, 2016 [sic])" (**Unsealing Order**) and the July 31, 2018 "Findings of Fact, Conclusions of Law and Order Denying GEICO's Motion to Reseal Filed Documents" (**FOFs/COLs/Order**) (collectively, **Unsealing Orders**), both entered by the Circuit Court.

On appeal, GEICO contends that the Circuit Court erred: (1) in granting Wagner's motion to unseal the case file on the basis of the public right of access, because the court failed to give adequate weight to countervailing compelling interests; and (2) in denying GEICO's motion to reseal selected portions of the case file, because the court failed to recognize the compelling interests in sealing those portions, the substantial harm to those interests from not sealing, and the lack of alternatives to sealing.[3]

We hold that the Circuit Court properly evaluated the Sealing Order in light of the procedural and substantive requirements for sealing court records, as set forth in Grube v. Trader, 142 Hawaiʻi 412, 420 P.3d 343 (2018). As to the substantive requirements, GEICO failed to demonstrate that there were no less restrictive alternatives to sealing the entire case file that would adequately protect any compelling interest

---

[1] The Honorable Karen T. Nakasone presided.

[2] The Honorable Keith K. Hiraoka presided.

[3] Pursuant to this court's August 24, 2022 Order Granting in Part and Denying in Part Motion to Substitute and to Dismiss for Lack of Appellate Jurisdiction, Civil Beat Law Center for the Public Interest has been substituted in place of non-party Wagner.

2

asserted by GEICO.  The Circuit Court thus did not err in ordering the case file unsealed and delaying implementation of the unsealing to allow GEICO to file a motion to reseal specific portions of the record.

We further hold that GEICO failed to meet its burden to prove that its request to reseal and redact portions of the record would serve a compelling interest.  GEICO asserts three purportedly compelling interests that would be served by such resealing:  protecting the attorney-client privilege, work product, and trade secrets.  Based on our review of the record, including the documents at issue, we conclude that the Circuit Court did not err in determining that GEICO failed to meet its burden to prove that:  (1) the purported attorney-client communications it sought to reseal were made for the purpose of facilitating the rendition of professional legal services by Roy to GEICO; (2) the materials it sought to reseal were protected by the work-product doctrine; and (3) the information it sought to redact constituted trade secrets.

Accordingly, we affirm the Unsealing Orders.

## I.  Background

The following findings of fact by the Circuit Court are unchallenged on appeal and thus binding on the parties and this court, see State v. Rodrigues, 145 Hawaiʻi 487, 494, 454 P.3d 428, 435 (2019):

### FINDINGS OF FACT

1.  GEICO does business in the State of Hawaiʻi as a motor vehicle insurer.

2.  . . . Roy is licensed to practice law in the State of Hawaiʻi.

3.  GEICO employed Roy as Managing Attorney for its Honolulu-based litigation department.

4.  One of Roy's job duties was to defend persons insured by GEICO against lawsuits arising from motor vehicle accidents.

5.  Roy's supervisor was Richard Dwyer, GEICO's Staff Counsel Director.  Dwyer is a lawyer but was never licensed to practice in the State of Hawaiʻi.

6. Roy worked with John Dornan, GEICO's Hawaiʻi Branch Claims Manager. Dornan is not a lawyer.

7. Roy also worked with Timothy Dayton, GEICO's Hawaiʻi Branch Office Manager. Dayton is not a lawyer.

8. Kekuailohia M. Beamer is licensed to practice law in the State of Hawaiʻi and worked as an attorney in GEICO's Honolulu-based litigation department.

9. Clarence S.K. Kekina is licensed to practice law in the State of Hawaiʻi and worked as an attorney in GEICO's Honolulu based litigation department.

10. Dee White, Christine Kaakua and Kathy A.T. Harimoto were claims examiners employed by GEICO and worked in GEICO's Honolulu claims office in non-managerial capacities on behalf of GEICO's insureds.

11. Roy's complaint was filed on July 24, 2013.

12. Roy's amended complaint was filed on September 18, 2013.

13. The complaint and first amended complaint allege, among other things, that GEICO violated HRS § 378-62 (part of the Hawaiʻi Whistleblowers' Protection Act) and that GEICO defamed Roy in his profession.

14. The complaint and first amended complaint also allege that GEICO interfered with Roy's ethical obligations to, exercise of independent judgment for, and attorney-client relationships with, GEICO's insureds.

15. GEICO, through its Corporate Counsel Susan H. Hamburg [(**Hamburg**)], take the position that Roy "had as his client, on the one hand, [GEICO], and, simultaneously on the other hand, [GEICO's] insureds."

16. GEICO never filed a motion to seal or redact Roy's complaint or amended complaint, or any of the exhibits to those documents, before settling this lawsuit.

17. On January 30, 2014, the court entered an order approving the parties' stipulation — entered into as part of a settlement — to seal the court's entire case file [*i.e.*, the Sealing Order].

18. A stipulation for dismissal of this lawsuit was filed on January 31, 2014.

19. Ed Wagner was a GEICO policyholder. His insured vehicle was damaged, and he made a claim with GEICO. He disagreed with GEICO's repair estimate, which called for the use of so-called "aftermarket" parts rather than original equipment manufacturer parts. He is a vocal critic of GEICO who has, among other things, emailed GEICO executives, submitted testimony to the Hawaiʻi state House of Representatives, created his own YouTube channel and posted a story about GEICO on an internet website.

FOFs/COLs/Order at 2-4 (some brackets added; footnote omitted).[4]

Following the 2014 dismissal of the case, nothing further happened until April 20, 2018, when the Circuit Court's Chief Judge received a letter from Wagner dated April 18, 2018, along with an unfiled motion to unseal the court's case file. On May 22, 2018, the Circuit Court issued a notice of ex parte communication with attachments that included a filed copy of Wagner's motion. The motion sought to unseal the court's case file "[p]ursuant to the constitutional right of access provided by the First Amendment of the U.S. Constitution and article I, section 4 of the Hawaiʻi Constitution[.]" On June 28, 2018, GEICO filed a memorandum in opposition to the motion to unseal. On July 2, 2018, Wagner filed a reply memorandum and the Roys filed a statement of no position. The motion was heard on July 6, 2018.

Following the hearing, the Circuit Court entered the Unsealing Order, which granted Wagner's motion to unseal. The court concluded that the January 30, 2014 Sealing Order failed to satisfy the procedural requirements for public notice and findings to support sealing. The court also addressed the substantive arguments for sealing, concluding in part that the interests recited in the parties' stipulation - "speculation, rumors and damage to [the parties'] reputations" - were not compelling. As to GEICO's arguments about trade secrets and attorney-client communications, the court noted that GEICO had failed to present an adequate record for the court to find a substantial probability that, absent closure, these compelling interests would be harmed. The Circuit Court directed the clerk of the court to unseal the file, but delayed implementation of the order until August 16, 2018, "to allow GEICO to file a motion to re-seal and file redacted versions of specific documents contained in the court's case file."

---

[4] We note that the FOFs/COLs/Order, which describes the documents at issue in some detail, is part of the public record on appeal, as further explained infra. Our descriptions of the documents at issue (see infra) thus rely on, and provide no further detail than, the corresponding descriptions in the FOFs/COLs/Order.

On July 16, 2018, GEICO filed a motion to reseal filed documents and to file redacted documents (**motion to reseal**). Specifically, GEICO sought to seal Exhibits 1, 2, 4, and 6 of the July 24, 2013 verified complaint (**Complaint**) and the September 18, 2013 verified first amended complaint (**Amended Complaint**) (collectively, **the complaints**).[5] Additionally, GEICO sought to redact "Complaint Paragraphs 13, 22-31, 33-35, 37-41, 44, 48-49, 52, 68-69, 86, 88, 90, 92, 94-96, 98, and 100" and "Amended Complaint Paragraphs 11, 20-29, 31-33, 35-41, 44, 48-53, 57, 74-75, 92, 94, 96, 98, 100-102, 104, and Plaintiff's prayer for relief in the Amended Complaint Paragraph 1." GEICO argued: "There are four compelling interests supporting [GEICO's] proposed redactions: (1) attorney-client privilege,[6] (2) work-product doctrine; (3) the integrity of [GEICO's] sensitive trade secrets; and (4) the propriety of the judicial process." (Footnote added.) On July 23, 2018, Wagner filed a memorandum in opposition to the motion to reseal.

Following a hearing on July 31, 2018, the Circuit Court entered the FOFs/COLs/Order, denying GEICO's motion to reseal. The Circuit Court ruled in part:

> MIXED FINDINGS OF FACT
> AND CONCLUSIONS OF LAW
>
> 1. None of the exhibits GEICO seeks to redact are "confidential communications made for the purpose of facilitating the rendition of professional legal services [by Roy] to [GEICO]". [Hawaiʻi Rules of Evidence (**HRE**)] Rule 503(b). They are not subject to or protected by GEICO's attorney-client privilege.
>
> [Discussion of individual exhibits]
>
> 2. In the case of Exhibit 2, even if the emails were subject to GEICO's attorney-client privilege, GEICO waived its privilege by copying the emails to White, Kaakua and Harimoto.
>
> . . . .
>
> 3. None of the allegations contained in the complaint or amended complaint describe "confidential communications

---

[5] The exhibits to the Complaint and the Amended Complaint are substantially the same.

[6] "Attorney-client privilege" and "lawyer-client privilege" are used interchangeably throughout this opinion.

made for the purpose of facilitating the rendition of professional legal services [by Roy] to [GEICO]". HRE Rule 503(b). . . . They are not protected by the attorney-client privilege.

4. None of the contents GEICO seeks to redact are protected by the "work product" rule because they were not "prepared [by GEICO] in anticipation of [this] litigation or for trial" of this lawsuit. [Hawaiʻi Rules of Civil Procedure (**HRCP**)] Rule 26(b)(4). Rather, they are the subjects of this lawsuit.

5. None of the contents GEICO seek to redact constitute "trade secrets."

. . . .

6. Even if any of the content GEICO seek to redact constituted "trade secrets," GEICO did not make efforts that were reasonable under the circumstances to maintain their secrecy.

. . . .

7. The possibilities that Wagner's motion to unseal was motivated by "his animus toward GEICO" (Dornan declaration ¶3), that Wagner could use the pleadings filed in this case to further an alleged "vendetta against GEICO" (Dornan declaration ¶7) or that Wagner "is endeavoring to use this Court as a vehicle to gratify his spite against GEICO and Mr. Dayton and promote public scandal" (Dornan declaration ¶12) are not compelling interests that override the constitutional presumption that court records shall be open to the public.

    a. As a member of the public, Wagner has a constitutional right of access to court proceedings and records, including the records in this case.

FOFs/COLs/Order at 19-25 (some brackets added).

Thus, the Circuit Court denied GEICO's motion to reseal based on Wagner's constitutional right of access to court proceedings and records. The Circuit Court ordered: "The court's file for this case . . . shall be unsealed in its entirety and without redaction on ***August 16, 2018***, pursuant to the [Unsealing Order]." Id. at 26.

On August 6, 2018, GEICO filed its notice of appeal, with attached copies of the Unsealing Orders, in this court. On August 7, 2018, GEICO filed a motion to stay execution of the Unsealing Orders in the Circuit Court.

On August 14, 2018, the Circuit Court entered an "Order on GEICO's Motion to Stay," which denied the motion as moot, "because the court lost jurisdiction to unseal the case file on

7

August 6, 2018, when GEICO filed their notice of appeal."  The Circuit Court further ordered:

> The clerk of the court is directed to not unseal the court's file, and to take no action other than to transmit the sealed portion of the record, the court's order publicly filed on July 6, 2018, and the documents and orders publicly filed thereafter, to the Intermediate Court of Appeals pursuant to HRAP Rule 11(b).

For purposes of the record on appeal, the Circuit Court thus distinguished "the sealed portion of the record" from the publicly filed July 6, 2018 Unsealing Order and the documents and orders publicly filed after that date.

On October 1, 2018, in compliance with the Circuit Court's Order on GEICO's Motion to Stay, the Circuit Court clerk transmitted to this court the "RECORD ON APPEAL (PART 1 OF 2 - SEALED)," which was filed under seal at appellate docket 28, and the "RECORD ON APPEAL (PART 2 OF 2)," which was publicly filed at appellate docket 30.  Part 2 of the record on appeal includes the Unsealing Order and all documents publicly filed in the Circuit Court after July 6, 2018, including GEICO's July 16, 2018 motion to reseal, along with supporting declarations and redacted exhibits, as well as the July 31, 2018 FOFs/COLs/Order.

The Circuit Court's Order on GEICO's Motion to Stay is not at issue in this appeal.

## II.  Standard of Review

The question whether the public has a qualified constitutional right of access to court records is a question of law, which we review *de novo*.  See Hussey v. Say, 139 Hawaiʻi 181, 185, 384 P.3d 1282, 1286 (2016) ("The appellate court reviews 'questions of constitutional law *de novo*, under the right/wrong standard.'"); see also Grube, 142 Hawaiʻi at 426 n.17, 420 P.3d at 357 n.17 ("There is nothing in the sealed documents to demonstrate on their face that disclosure would pose a threat to an interest of adequate gravity to overcome the public's constitutional right of access."); Times Mirror Co. v. United States, 873 F.2d 1210, 1212 (9th Cir. 1989) ("The question whether the public has a qualified First Amendment right of

access to search warrants and supporting affidavits during the pre-indictment stage of a criminal investigation is a question of law, which we review *de novo*.").

### III. Discussion

#### A. The Unsealing Order

GEICO contends that the Circuit Court erred in unsealing the case file and ignoring "the compelling interest in favor of promoting judicial settlements[.]" GEICO argues that the court-approved stipulation to seal the case file, given Roy's "spurious allegations" and the confidential information he included in and attached to the complaints, "was a vital benefit of the bargain for GEICO." GEICO maintains that its reliance interest "outweighs any right of public access to the long-sealed and long-settled judicial records." GEICO further argues that the interest in promoting settlements is particularly compelling here, because the sealed materials never should have been "docketed," *i.e.*, publicly filed, in the first instance, and are no longer current. GEICO also contends that the Circuit Court "erred in sanctioning the use of the judicial process for improper purposes[,]" because "[i]t is clear from [Wagner's] vitriolic and widespread attacks against GEICO that Wagner is attempting to use the unsealing of the records in this case to further his campaign of disparaging and harassing GEICO."

Courts in Hawaiʻi "have a long tradition of accessibility by the public[.]" Oahu Publications Inc. v. Ahn, 133 Hawaiʻi 482, 494, 331 P.3d 460, 472 (2014) (tracing the history of public access to judicial records). Accordingly, the Hawaiʻi Supreme Court "has recognized a tradition of public access, declaring it 'firmly embedded in our system of jurisprudence' as a 'general policy of open trials.'" Id. at 495, 331 P.3d at 473 (quoting Gannett Pac. Corp. v. Richardson, 59 Haw. 224, 228, 580 P.2d 49, 54 (1978)). The supreme court has further explained:

> The right of public access corresponds with our
> system's "deeply ingrained" traditional mistrust for secret
> trials . . . . Gannett Pac. Corp.[, 59 Haw. at 228, 580

> P.2d at 54].  The right of access thus functions not only to protect the public's ability to obtain information—a requisite "to the enjoyment of other First Amendment rights"—but also "as a safeguard of the integrity of our courts."  Ahn, 133 Hawaiʻi at 494-95, 331 P.3d at 472-73 (quoting Globe Newspaper Co. v. Superior Court for the Cty. of Norfolk, 457 U.S. 596, 604, 102 S. Ct. 2613, 73 L. Ed. 2d 248 (1982); State v. Hashimoto, 47 Haw. 185, 200, 389 P.2d 146, 155 (1963)).

Grube, 142 Hawaiʻi at 422, 420 P.3d at 353.

In Ahn and Grube, the supreme court examined the right of public access in the context of criminal proceedings.  In Ahn, the court ruled that the U.S. Constitution and article I, section 4 of the Hawaiʻi Constitution grant the public a qualified right of access to observe court proceedings in criminal trials.  133 Hawaiʻi at 494, 496, 331 P.3d 460, 472, 474.  In Grube, the court further ruled that the public's "right of access to court proceedings in criminal cases . . . is not limited to merely observing criminal trials."  142 Hawaiʻi at 422, 420 P.3d at 353 (footnote and citations omitted).  Rather, "the public has a constitutional right of access to criminal proceedings generally, as well as the records thereof."  Id. (citing Ahn, 133 Hawaiʻi at 498-99, 331 P.3d at 476-77).

Although Ahn and Grube involved criminal proceedings, the court in Ahn recognized that "[t]he reasons underlying openness in the criminal context, as enunciated in Gannett Pac. Corp., are equally compelling in the civil context."  Ahn, 133 Hawaiʻi at 496 n.18, 331 P.3d at 474 n.18 (original brackets omitted) (quoting In re Estate of Campbell, 106 Hawaiʻi 453, 462, 106 P.3d 1096, 1105 (2005)); see also Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597 (1978) ("It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." (footnote omitted)); Courthouse News Serv. v. Planet, 947 F.3d 581, 590 (9th Cir. 2020) ("The Supreme Court has yet to explicitly rule on whether the First Amendment right of access to information reaches civil judicial proceedings and records, but the federal courts of appeals widely agree that it does.  Indeed, every circuit to consider the issue has uniformly concluded that the right applies to both civil and criminal proceedings."

(citations omitted)).

Grube reiterated the reasons for open proceedings, but also recognized that "[n]otwithstanding these serious considerations, the public's constitutional right of access is not absolute." 142 Hawaiʻi at 423, 420 P.3d at 354 (citing Ahn, 133 Hawaiʻi at 496, 331 P.3d at 474). "In 'rare and compelling circumstances,' court proceedings may be closed to protect an interest 'that outweighs the value of openness.'" Id. (citing Ahn, 133 Hawaiʻi at 495-96, 331 P.3d at 473-74); see also In re Estate of Campbell, 106 Hawaiʻi at 465, 106 P.3d at 1108 (adopting a balancing approach in which the party seeking closure must show that "strong countervailing reasons" outweigh the public's right of access to judicial proceedings and records).

Grube discussed the procedural and substantive requirements for closing court proceedings or sealing records in a criminal case. 142 Hawaiʻi at 423-428, 420 P.3d at 354-59. The procedural requirements are: "(1) those excluded from the proceeding must be afforded a reasonable opportunity to state their objections; and (2) the reasons supporting closure must be articulated in findings." Id. at 423, 420 P.3d at 354 (quoting Ahn, 133 Hawaiʻi at 497-98, 331 P.3d at 475-76). The substantive factors that the court must consider in its findings are: "(1) the closure serves a compelling interest; (2) there is a substantial probability that, in the absence of closure, this compelling interest would be harmed; and (3) there are no alternatives to closure that would adequately protect the compelling interest." Grube, 142 Hawaiʻi at 424, 420 P.3d at 355 (brackets omitted) (quoting Ahn, 133 Hawaiʻi at 497–98, 331 P.3d at 475–76).

The supreme court and this court have indicated that these procedural and substantive prerequisites for sealing court documents should be applied in at least some, if not all, civil proceedings. See, e.g., Civil Beat Law Ctr. for Pub. Interest v. Chang, No. SCPW-21-0000511, 2022 WL 1490412, at *2 (Haw. May 11, 2022) (denying modified writ petition seeking to prohibit the trial judge from enforcing a sealing order: "At this time, . . . the more appropriate course of action is for petitioner to seek

11

relief, as modified, in the underlying case, and for the respondent judge, after all parties are heard on the matter, to thereafter enter formal written findings consistent with constitutional standards and case law, specifically Ahn and Grube."); Rohrer v. Hoyte, No. CAAP-16-0000580, 2019 WL 5457852, at *1 n.2 (Haw. App. Oct. 24, 2019) (SDO) ("The Circuit Court's order granting Defendants' ex parte motion to submit their motion to dismiss under seal does not contain specific findings as required by Grube v. Trader, 142 Hawaiʻi 412, 424, 420 P.3d 343, 355 (2018)." (citing Estate of Campbell, 106 Hawaiʻi at 462, 106 P.3d at 1105)).[7] Moreover, prior to Ahn and Grube, the supreme court applied similar procedural and substantive standards for sealing court records in a probate (i.e., civil) proceeding, based on the right of public access to judicial proceedings and records. See Estate of Campbell, 106 Hawaiʻi at 465, 106 P.3d at 1108 (holding that third parties have a right to challenge the sealing of probate court records, and "the presumption of openness requires the [party seeking closure] to demonstrate that strong countervailing reasons weigh against the public's presumptive right of general access to judicial proceedings and records.") Accordingly, here, the Circuit Court properly evaluated the Sealing Order in light of Grube's procedural and substantive prerequisites for sealing court records.[8]

---

[7]   We also take judicial notice that on August 27, 2018, Wagner filed a Petition for Writ of Prohibition and Writ of Mandamus (**Petition**) in the supreme court, seeking, among other things, a writ of mandamus ordering the Circuit Court to unseal the underlying case. See Pet. for Writ of Prohibition, Wagner v. Hiraoka, No. SCPW-18-0000670, Judiciary Information Management System dkt. 1 at 1, 26. The supreme court subsequently denied the Petition. Id., 2018 WL 5044355, at *1 (Haw. Oct. 17, 2018). In denying the Petition, the supreme court stated, in part: "Upon consideration of . . . Wagner's [P]etition . . ., it appears that the respondent judge complied with the procedure set forth in Grube v. Trader, 142 Hawaiʻi 412, 420 P.3d 343 (2018) in addressing the sealing issue . . . ." Id., 2018 WL 5044355, at *1 (emphasis added).

[8]   In Estate of Campbell, the supreme court noted:

We express no opinion as to the applicability of the balancing test in situations where a specific statute or rule mandates confidentiality or where such an approach may be inappropriate, as might be the case, for example, in certain family court matters. The balancing approach should be applied on a case-by-case basis.

The Circuit Court concluded that neither of the two procedural requirements for sealing documents was satisfied when the court entered the Sealing Order. On appeal, GEICO does not challenge this ruling, focusing instead on the substantive requirements to overcome the right of public access. As discussed above, GEICO has asserted a number of interests that are purportedly served by keeping the entire case file sealed. However, we need not consider whether any of these interests is "compelling" or would be harmed in the absence of closure, given that GEICO has not demonstrated that "there are no [less restrictive] alternatives to closure that would adequately protect [any] compelling interest." See Grube, 142 Hawaiʻi at 427, 420 P.3d at 358 (original brackets omitted) (quoting Oregonian Pub. Co. v. U.S. Dist. Court for Dist. of Or., 920 F.2d 1462, 1466 (9th Cir. 1990)); see also Estate of Campbell, 106 Hawaiʻi at 465, 106 P.3d at 1108 ("the presumption of openness requires the estate to demonstrate that strong countervailing reasons" outweigh the public's right of access (emphasis added)). As the supreme court stated in Grube:

> "Even where denial of access is appropriate, it must be no greater than necessary to protect the interest justifying it." United States v. Brooklier, 685 F.2d 1162, 1172 (9th Cir. 1982). Thus, where a feasible alternative exists that would protect the compelling interest while avoiding or minimizing impairment of the public's constitutional right of access, total sealing is inappropriate. Id. at 1169; see also Oregonian Pub. Co., 920 F.2d at 1467 n.1 . . . .

142 Hawaiʻi at 427, 420 P.3d at 358.

Thus, even if GEICO could demonstrate the first two substantive requirements for sealing court records, it offered no cogent explanation below, and offers none on appeal, as to why sealing the entire case file was necessary to protect its asserted interests. Indeed, GEICO acknowledged, in moving to reseal only selected portions of the complaints, "that the only redacted paragraphs in these documents are those [whose

---

106 Hawaiʻi at 465 n.26, 106 P.3d at 1108 n.26. Similarly, here, we express no opinion as to the applicability of the prerequisites for sealing documents in civil cases where a specific statute or rule mandates confidentiality or where such an approach is otherwise inappropriate.

13

disclosure] would violate a compelling interest." Accordingly, the Circuit Court did not err in ordering the case file unsealed and delaying implementation of the unsealing for a period of time, thereby allowing GEICO to file a motion to reseal specific portions of the record.

## B.  The FOFs/COLs/Order

GEICO argues that the Circuit Court "compounded its error by denying GEICO's motion to reseal selected portions of the record." Specifically, GEICO sought to reseal Exhibits 1, 2, 4, and 6 and to redact numerous paragraphs of the complaints, identified in section I above. GEICO identified four purportedly compelling interests that would be served by the requested resealing, three of which it asserts on appeal:  protecting the attorney-client privilege, work product, and trade secrets.

For the reasons discussed below, we hold that GEICO failed to meet its burden to prove that its request to reseal and redact portions of the record would serve a compelling interest. We thus do not address the remaining requirements for sealing court records.

### 1.  Attorney-Client Privilege

GEICO contends that Exhibit 1 (which comprises two emails), as well as several paragraphs of the complaints, are subject to the attorney-client privilege.[9]

The supreme court has recently explained:

> In order for a document to be protected from disclosure pursuant to the lawyer-client privilege, as defined in [Hawaiʻi Rules of Evidence (**HRE**)] Rule 503, the document must contain information communicated within the context of a lawyer-client relationship. HRE Rule 503(b) provides for an evidentiary privilege for confidential lawyer-client communications:  "a client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to

---

[9] GEICO asserts that the attorney-client privilege applies to: (1) Exhibit 1 and the paragraphs that discuss that exhibit, *i.e.*, paragraphs 24-26 of the Complaint, and paragraphs 22-24 of the Amended Complaint; and (2) paragraphs 13, 22, 23, 27-31, 33, and 48 of the Complaint, and paragraphs 11, 20, 21, 25-28, 31, and 48 of the Amended Complaint.

14

> the client (1) between the client or the client's
> representative and the lawyer or the lawyer's representative
> . . . ."

Honolulu Civil Beat Inc. v. Dep't of Attorney Gen., 146 Hawaiʻi 285, 293, 463 P.3d 942, 950 (2020) (original brackets omitted).

"[P]roper practice requires preliminary judicial inquiry into the existence and validity of the [lawyer-client] privilege and the burden of establishing the privilege rests on the claimant." Id. (quoting Sapp v. Wong, 62 Haw. 34, 38, 609 P.2d 137, 140 (1980)); see also Anastasi v. Fid. Nat. Title Ins. Co. (Anastasi I), 134 Hawaiʻi 400, 418, 341 P.3d 1200, 1218 (App. 2014), aff'd in part, vacated in part, 137 Hawaiʻi 104, 366 P.3d 160 (2016) (Anastasi II) ("[T]he party claiming the privilege has the burden of establishing that the privilege exists and that it applies as asserted." (citing DiCenzo v. Izawa, 68 Haw. 528, 536, 723 P.2d 171, 176 (1986); Sapp, 62 Haw. at 38, 609 P.2d at 140)). "'An *ipse dixit* claim of privilege' clearly does not suffice." DiCenzo, 68 Haw. at 536, 723 P.2d at 176 (quoting Sapp, 62 Haw. at 38, 609 P.2d at 140); see also United States v. Martin, 278 F.3d 988, 1000 (9th Cir. 2002) (construing analogous federal law: "A party claiming the privilege must identify specific communications and the grounds supporting the privilege as to each piece of evidence over which privilege is asserted. Blanket assertions are 'extremely disfavored.'" (citations omitted)). Thus, GEICO had the burden of establishing the asserted privilege with respect to the purportedly protected portions of the record.

Under HRE Rule 503(a)(1), "[a] 'client' is a person, public officer, or corporation, association, or other organization or entity, either public or private, who is rendered professional legal services by a lawyer, or who consults with a lawyer with a view to obtaining professional legal services." An insurer such as GEICO can come within the definition of a "client," and "the purpose underlying the attorney-client privilege applies when a confidential communication is made between persons covered by HRE Rule 503 for the purpose of facilitating the rendition of legal services to an insurer." Anastasi I, 134 Hawaiʻi at 418, 341 P.3d at 1218.

15

We have noted the challenges in determining whether the privilege applies when a company's in-house attorney is involved:

> [U]nlike the situation where a client individually engages a lawyer in a particular matter, staff attorneys may serve as company officers, with mixed business-legal responsibility; whether or not officers, their day-to-day involvement in their employers' affairs may blur the line between legal and nonlegal communications; and their advice may originate not in response to the client's consultation about a particular problem but with them, as part of an ongoing, permanent relationship with the organization. In that the privilege obstructs the truth-finding process and its scope is limited to that which is necessary to achieve its purpose, the need to apply it cautiously and narrowly is heightened in the case of corporate staff counsel, lest the mere participation of an attorney be used to seal off disclosure.

Id. at 420, 341 P.3d at 1220 (quoting Rossi v. Blue Cross & Blue Shield of Greater N.Y., 540 N.E.2d 703, 705 (N.Y. 1989)).

In addition, the supreme court has recognized the potential for conflict inherent in the tripartite relationship between insurer, insured and insurance defense counsel. See Finley v. Home Ins. Co., 90 Hawaiʻi 25, 29, 975 P.2d 1145, 1149 (1998). "[R]etained counsel *solely* represents the insured when a conflict arises between the interests of the insurer and the insured." Id. at 32, 975 P.2d at 1152.

These principles guide our analysis of the privilege claims asserted in GEICO's motion to reseal selected portions of the record. As to the first email in Exhibit 1, GEICO argued:

> The first document in Exhibit 1 contains confidential communications created by [Roy] - acting in his capacity as in-house counsel for [GEICO] - made for the purpose of facilitating his professional legal services between both [GEICO] and [GEICO's] insureds. Accordingly, it is protected by the attorney-client privilege owned by [GEICO] and [GEICO's] insureds.

As to the second email in Exhibit 1, GEICO argued:

> The second document in Exhibit 1 contains confidential communications to [Roy] solicited by [GEICO's] Staff Counsel Director requesting legal advice and analysis from [Roy] in his capacity as [GEICO's] in-house counsel. This document is therefore likewise covered by the attorney-client privilege.

GEICO made similar assertions of privilege regarding the paragraphs of the complaints it sought to reseal. Additionally, Hamburg stated in a declaration that: (1) "[Roy] managed

16

litigation involving [GEICO's] insureds and effectively served as local in-house counsel for [GEICO]"; (2) "[Roy] worked in collaboration with other members of [GEICO's] Honolulu-based litigation department, including . . . Dornan, . . . [and] was supervised by . . . Dwyer"; (3) "[Roy] had as his client, on the one hand, [GEICO], and, simultaneously on the other hand, [GEICO's] insureds"; (4) "[i]n both these capacities, [Roy], Dornan, Dwyer and others routinely engaged in confidential legal strategy discussions subject to both the attorney-client privilege and/or the work-product privilege"; and (5) "[b]oth the Complaint and the Amended Complaint contained substantial and detailed information protected by the attorney-client privilege and/or the work-product privilege."[10]

The Circuit Court described Exhibit 1 and concluded that it was not protected by the attorney-client privilege, as follows:

> a.  Exhibit 1 to the complaint and amended complaint is a compilation of two emails:
>
>> i.   the email from Roy to his supervisor, Dwyer, dated August 19, 2012, is not a communication made for the purpose of facilitating the rendition of professional legal services by Roy to GEICO.  GEICO did not solicit legal advice from Roy; the email is a discussion between GEICO's staff counsel and his supervisor questioning GEICO's policy about what staff counsel may tell staff counsel's client — GEICO's insured — about whether GEICO will indemnify its insured for liability in excess of the insured's policy limit in cases where GEICO rejects a policy limits settlement demand, or where GEICO refuses to agree to arbitration pursuant to HRS § 431:10C-213.5.  It did not "originate . . . in response to [GEICO's] consultation about a particular problem" but as part of a discussion about Roy's "ongoing, permanent relationship with [GEICO]."  Anastasi I, 134 Hawaiʻi at 420.  It is not protected by GEICO's attorney-client privilege.
>>
>> ii.  the email from Dwyer to Roy, dated October 24, 2007 and copied to Beamer, is not a communication made for the purpose of facilitating the rendition of professional legal services by Roy to GEICO.  GEICO did not solicit legal advice from Roy; Dwyer was telling Roy how

---

[10]  We note that the Hamburg declaration is part of the public record on appeal.

> Dwyer wanted Roy to do his job. The email contains the allegedly slanderous statements ("smell like you are running scared" . . . "you have never had a jury trial and have a reputation, deserved or not, that you don't want to try a case" . . . "you are going to have to try a case someday — this is becoming embarrassing"), published to a third person (Beamer), upon which Roy's defamation claim was based.

FOFs/COLs/Order at 19-20 (brackets in original; footnote omitted).

Similarly, the Circuit Court ruled that none of the allegations contained in the complaints were protected by the attorney-client privilege because:

> None of the allegations . . . describe "confidential communications made for the purpose of facilitating the rendition of professional legal services [by Roy] to [GEICO]". HRE Rule 503(b). GEICO did not ask Roy for legal advice. Roy did not provide legal advice to GEICO as GEICO's lawyer. The communications between Roy, Dwyer, Dornan and Dayton described in the complaint and amended complaint concerned Roy's day-to-day employment by, and relationship to, GEICO.

Id. at 23-24 (brackets in original).

Based on our review of the record, including the purportedly privileged communications, we conclude that the Circuit Court did not err in determining that GEICO failed to meet its burden to prove that the communications were made for the purpose of facilitating the rendition of professional legal services by Roy to GEICO. See Honolulu Civil Beat Inc., 146 Hawaiʻi at 295, 463 P.3d at 952 ("Notwithstanding the Department's conclusory claims that the report was privileged and confidential, the record before this court . . . fails to establish that the Department was acting pursuant to a lawyer-client relationship when it prepared the report and provided it to the legislature.") In particular, given Roy's dual role as in-house counsel for GEICO and counsel for GEICO's insureds, it is not evident from the information provided by GEICO (i.e., the Hamburg declaration) or the communications themselves that each was made within the context of a lawyer-client relationship between Roy and GEICO. For example, the first email in Exhibit 1 reflects an August 2012 communication

18

from Roy to Dwyer, his GEICO supervisor, "questioning GEICO's policy about what staff counsel may tell staff counsel's client — GEICO's insured — about [certain indemnification and arbitration issues.]" FOFs/COLs/Order at 19. It is not apparent from the email itself that Roy was communicating for the purpose of facilitating the rendition of professional legal services to GEICO.[11/] The second email in Exhibit 1 reflects an earlier, October 2007 communication from Dwyer to Roy (copied to Beamer) in which Dwyer was, primarily, "telling Roy how . . . to do his job." FOFs/COLs/Order at 20. GEICO notes that the email also references a "particular claim," but it is not evident from the email alone that Dwyer was communicating with Roy for the purpose of facilitating the rendition of professional legal services to GEICO. For similar reasons, the Circuit Court did not err in determining that GEICO failed to prove that the paragraphs of the complaints discussing Exhibit 1 and other communications to or from Roy were made for the purpose of facilitating the rendition of professional legal services by Roy to GEICO.

Accordingly, the Circuit Court did not err in concluding that the e-mails contained in Exhibit 1 and the communications between Roy, Dwyer, Dornan and Dayton described in the complaints were not communications made for the purpose of facilitating the rendition of professional legal services by Roy to GEICO, and thus were not protected by GEICO's attorney-client privilege.

## 2. Work-Product Doctrine

GEICO contends that the Circuit Court erred in ruling that Exhibits 2, 4, and 6 and numerous paragraphs of the complaints were not protected from disclosure under the work

---

[11/] GEICO appears to contend that its request for legal advice was implicit in the communications at issue. However, we cannot infer such a request based solely on the contents of the communications, and GEICO has provided no other information or evidence supporting the existence of such a request.

19

product doctrine.[12]/

As this court stated in <u>Anastasi I</u>:

"The primary purpose of the work product rule is to prevent exploitation of a party's efforts in preparing for litigation[,]" <u>Holmgren v. State Farm Mut. Auto. Ins. Co.</u>, 976 F.2d 573, 576 (9th Cir. 1992) (citation and internal quotation marks omitted), and to "protect written statements, private memoranda and personal recollections prepared or formed by an adverse party's counsel in the course of his legal duties." <u>Metzler Contracting Co. v. Stephens</u>, 642 F. Supp. 2d 1192, 1205 (D. Haw. 2009) (citation and internal quotation marks omitted).

134 Hawaiʻi at 423, 341 P.3d at 1223 (footnote omitted).

Hawaii's work-product doctrine is set forth in HRCP Rule 26, which provides, in relevant part:

**(b) Discovery Scope and Limits**. Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:

(1) *In General.*

(A) Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action . . . .

. . . .

(4) *Trial Preparation: Materials.* A party may obtain discovery of documents, electronically stored information, and tangible things otherwise discoverable under subdivision (b)(1) of this Rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

"Thus, the relevant inquiry for determining whether a document can be protected by work product doctrine is whether the document was prepared in anticipation of litigation or trial."

---

[12]/ GEICO asserts that the work-product doctrine applies to paragraphs 27-31, 33-34, and 35 of the Complaint and paragraphs 25-29, 31-32, and 33 of the Amended Complaint based on derivative information contained in the exhibits. Additionally, GEICO claims the work-product doctrine applies to paragraphs 13, 23, 24, 34, 48-49, 52, 68-69, 88, 92, 94-96, and 98 of the Complaint and paragraphs 11, 21, 22, 32, 48-51, 57, 74-75, 92, 94, 96, and 98 of the Amended Complaint.

Anastasi II, 137 Hawaiʻi at 113–14, 366 P.3d at 169–70. "[E]ven though HRCP Rule 26(b)(4) generally prohibits the discovery of documents prepared in anticipation of litigation or for trial, 'the difficulty of this issue is determining at what point work produced by an insurer's in-house counsel acting in a dual role becomes "work prepared in anticipation of litigation."'" Id. at 112, 366 P.3d at 168 (original brackets omitted) (quoting Anastasi I, 134 Hawaiʻi at 425, 341 P.3d at 1225).

This court has also made clear that "the burden of establishing work product protection lies with the proponent, and it must be specifically raised and demonstrated rather than asserted in a blanket fashion." Anastasi I, 134 Hawaiʻi at 425, 341 P.3d at 1225 (brackets omitted) (quoting Holliday v. Extex, 447 F. Supp. 2d 1131, 1138 (D. Haw. 2006)); see also Weber v. Paduano, No. 02 CIV. 3392 (GEL), 2003 WL 161340, at *4 (S.D.N.Y. Jan. 22, 2003) (construing analogous federal law: "[I]n the insurance context, it is particularly important that the party opposing production of the documents, on whom the burden of proof as to privilege rests, demonstrate by specific and competent evidence that the documents were created in anticipation of litigation." (citing Harrigan v. Electronic Pre-Press Systems, Inc., No. 90 Civ. 4081(MEL), 1992 WL 121438, at *3 (S.D.N.Y. May 15, 1992))).

Here, GEICO asserted work-product protection in the Circuit Court, as follows:

> [T]he Complaint and the Amended Complaint both contain extensive materials protected by the work-product doctrine. Specifically, Exhibit 2 contains strategy e-mails exchanged between members of Defendant's Honolulu litigation team in anticipation of litigation on behalf of multiple of Defendant's insureds. As such, Exhibit 2 is protected by the work-product privilege.
>
> Additionally, Exhibit 4 contains an e-mail from Mr. Dwyer to Plaintiff prepared with regard to the appropriate litigation strategy for Plaintiff's cases. Exhibit 6 contains Plaintiff's response to Mr. Dwyer expressing his view on the appropriate litigation strategy with regard to his litigation cases. Both Exhibit 4 and Exhibit 6 are therefore covered by work-product privilege because the exhibits were prepared in anticipation of litigation.

GEICO further argued that several paragraphs of the complaints (identified supra) that discussed Exhibits 2, 4, and 6 contained

21

"derivative" work product, and that numerous other paragraphs of the complaints also contained protected work product. In her declaration, Hamburg generally asserted that "[b]oth the Complaint and the Amended Complaint contained substantial and detailed information protected by the attorney-client privilege and/or the work-product privilege."

The Circuit Court described Exhibits 2, 4, and 6 as follows:

> b.    Exhibit 2 to the complaint and amended complaint are . . . compilations of emails:
>
> i.    the email from Beamer to Roy dated August 18, 2011, and copied to White, Kaakua, Harimoto and Dornan . . . is a discussion among GEICO's staff counsel — copied to GEICO's claim handlers and their claim manager — about responding to a plaintiff's attorney's proposal for arbitration pursuant to HRS § 431:10C-213.5 in two pending cases. . . .
>
> ii.    Dornan's email response to Beamer and Roy, also dated August 18, 2011, and also copied to White, Kaakua and Harimoto . . . is a directive from GEICO's Branch Claims Manager to two of GEICO's staff counsel about who within GEICO is authorized to decide on binding arbitration.
>
> iii.    the email from Dornan to Roy, Beamer and Kekina dated March 13, 2012, and copied to Timothy Dayton and "HI CU," . . . communicates information from fee counsel about a plaintiff's counsel's conduct during a Court Annexed Arbitration Program hearing, and another directive from GEICO's Continuing Unit Manager to three of GEICO's staff counsel about who within GEICO is authorized to decide on binding arbitration.
>
> c.    Exhibit 4 to the complaint and amended complaint is Dwyer's email to Roy, dated September 18, 2012, responding to Roy's August 19, 2012 email (part of Exhibit 1). . . . Dwyer was again telling Roy how Dwyer wanted Roy to do his job. The email is GEICO's Staff Counsel Director's directive to one of GEICO's staff counsel concerning staff counsel's "ongoing, permanent relationship with [GEICO]," Anastasi I, 134 Hawaiʻi at 420 . . . ."
>
> d.    Exhibit 6 to the complaint and amended complaint is Roy's email to Dwyer, dated September 24, 2012, responding to Dwyer's September 18, 2012 email (Exhibit 4). . . . [T]he email is GEICO's staff counsel acknowledging GEICO's Staff Counsel Director's directive, questioning allegedly retaliatory and discriminatory adverse employment actions taken by GEICO, and requesting that GEICO preserve electronically stored information from spoliation.

FOFs/COLs/Order at 20-22 (some brackets added; footnotes

22

omitted).

As to Exhibits 2, 4, and 6 and the identified paragraphs of the complaints, the Circuit Court concluded that "[n]one of the contents GEICO seeks to redact are protected by the 'work product' rule because they were not 'prepared [by GEICO] in anticipation of [this] litigation or for trial' of this lawsuit. HRCP Rule 26(b)(4)." Id. at 24 (some brackets added).

On appeal, GEICO argues that these materials reflect discussions among GEICO's attorneys and representatives "concerning actions and strategies to pursue in specific litigation (the cases in which Roy represented GEICO's insureds) and the scope of legal advice that was appropriate (or legally required) to be given to GEICO's insureds during that representation." GEICO also takes issue with the Circuit Court's use of the word "this" in concluding that the materials at issue were not protected because they were not prepared in anticipation of this litigation. GEICO argues that the fact that the materials at issue were created in anticipation of different litigation does not abrogate the applicability of the work-product doctrine.

GEICO is correct that the materials at issue need not have been prepared in anticipation of this litigation, meaning the lawsuit initiated by Roy's Complaint, if the materials are otherwise protected by the work-product doctrine. By its terms, HRCP Rule 26(b)(4) does not limit work-product protection to materials prepared for the case in which the materials are sought. Rather, to qualify for work-product protection, the materials at issue must be prepared: (1) "in anticipation of litigation or for trial," and (2) "by or for another party[,] or by or for that other party's representative[.]" HRCP Rule 26(b)(4). A number of federal courts have construed substantially similar language in Federal Rules of Civil Procedure (**FRCP**) Rule 26(b)(3) as protecting materials prepared for any litigation or trial as long as they were prepared by or for a party to the litigation in which the protection is being asserted. See, e.g., In re California Public Utilities Comm'n,

892 F.2d 778, 781 (9th Cir. 1989) ("[W]e conclude that [FRCP Rule 26(b)(3)], on its face, limits its protection to one who is a party (or a party's representative) to the litigation in which discovery is sought."); <u>Underwriters Ins. Co. v. Atlanta Gas Light Co.</u>, 248 F.R.D. 663, 667 (N.D. Ga. 2008) ("[C]ourts have generally found that documents produced in anticipation of litigating one case remain protected in a subsequent case if they were created by or for a party to the subsequent litigation." (citing cases)); <u>see also</u> <u>FTC v. Grolier, Inc.</u>, 462 U.S. 19, 25 (1983) (stating in dicta: "[T]he literal language of [FRCP Rule 26(b)(3)] protects materials prepared for <u>any</u> litigation or trial as long as they were prepared by or for a party to the subsequent litigation." (citing 8 J. Wright & A. Miller, Federal Practice and Procedure § 2024, at 201 (1970))). Additionally, at least one court has recognized that federal work-product protection extends even to non-parties to the litigation in which the information is sought. <u>See</u> <u>Federal Election Comm'n v. The Christian Coalition</u>, 179 F.R.D. 22, 24 (D.D.C. 1998) ("The more considered view appears to be that work product protection applies (1) to materials prepared for any litigation; and that (2) because the rule applies equally to one-time litigants and repeat players, the protection survives the termination of the litigation for which it was prepared; and that under the rationale of <u>Hickman</u>[ v. Taylor, 329 U.S. 495 (1947)], non-parties should be able to assert work product privilege claims even though Rule 26(b)(3) is phrased only in terms of the parties." (citations omitted)).

Based on its non-limiting language, we hold that HRCP Rule 26(b)(4) protects materials prepared in anticipation of <u>any</u> litigation and survives the termination of the litigation for which it was prepared. We need not determine the precise contours of Hawaii's work-product doctrine, *i.e.*, whether its protection extends to non-parties to the litigation in which the information is sought, because, here, it appears that Exhibits 2, 4, and 6 were prepared by individuals who either <u>are</u> or represent parties in this case. Thus, the materials at issue would qualify for work product protection under HRCP Rule 26(b)(4), as long as

they were prepared in anticipation of litigation.

Exhibits 2, 4, and 6 appear to be email communications to or from one or more in-house attorneys for GEICO who allegedly acted in a dual role. See FOFs/COLs/Order at 20-22. In these circumstances, where documents are claimed to serve a dual purpose, the "because of" test applies. See Anastasi II, 137 Hawaiʻi at 113, 366 P.3d at 169.

> Dual purpose documents are deemed prepared because of litigation if "in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation." In applying the "because of" standard, courts must consider the totality of the circumstances and determine whether the "'document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of litigation.'"
>
> United States v. Richey, 632 F.3d 559, 567-68 (9th Cir. 2011)(citations omitted).

Id. (quoting Anastasi I, 134 Hawaiʻi at 425, 341 P.3d at 1225). The supreme court has further explained:

> Under the "because of" test, courts are instructed to consider whether given the totality of the circumstances it can be fairly said that a document was prepared or obtained because of the prospect of litigation. This test aligns with the scope of the privilege as circumscribed in HRCP Rule 26 because the statutory privilege protects only materials prepared in anticipation of litigation or for trial.

Id. at 114, 366 P.3d at 170.

Here, GEICO submitted Exhibits 2, 4, and 6 for the Circuit Court's in camera review, but did not otherwise submit any evidence regarding "the factual situation in the particular case" or cases allegedly involved in these communications or in the parts of the complaints that GEICO sought to redact. Id. at 113, 366 P.3d at 169. We are thus left to infer that Exhibit 2 concerns "actions and strategies to pursue in specific litigation . . . in which Roy represented GEICO's insureds[,]" despite the fact that the subject matter of this email compilation appears to relate primarily to GEICO's policy regarding "who within GEICO is authorized to decide on binding arbitration [proposals]." FOFs/COLs/Order at 20-21. Similarly, we are left to speculate

that Exhibits 4 and 6 concern litigation that Roy was handling for GEICO's insureds, despite the fact that these emails appear primarily to reflect Dwyer "again telling Roy how . . . to do his job[,]" and Roy acknowledging that directive and "questioning allegedly retaliatory and discriminatory adverse employment actions taken by GEICO[.]"  Id. at 22.  In short, the substance of the disputed materials appears to concern the broader question of whether Roy could independently exercise his role as counsel for his clients (the GEICO insureds), or whether GEICO could control certain aspects of how he handled representing clients in third-party cases.  "[I]t is well established that documents prepared in the ordinary course of business are not protected by the work-product doctrine because they would have been created regardless of the litigation."  Anastasi II, 137 Hawaiʻi at 112, 366 P.3d at 168 (quoting Anastasi I, 134 Hawaiʻi at 425, 341 P.3d at 1225).

Based on our review of the record, including Exhibits 2, 4, and 6, we conclude that GEICO failed to carry its burden of establishing that the materials it sought to reseal or redact "w[ere] created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of litigation."  Anastasi II, 137 Hawaiʻi at 113, 366 P.3d at 169 (quoting Anastasi I, 134 Hawaiʻi at 425, 341 P.3d at 1225).  Accordingly, the Circuit Court did not err in concluding that Exhibits 2, 4, and 6 and the identified paragraphs of the complaints were not protected by the work-product doctrine.[13]

### 3.  Trade Secrets

GEICO also contends that the Circuit Court erred in failing to recognize that parts of the complaints contained trade secrets and should have been protected from public disclosure on

---

[13]     Relatedly, the Circuit Court's use of the word "this" in concluding that the materials at issue were not protected because they were not prepared in anticipation of this litigation was harmless error.

that basis.[14/]

HRE Rule 508 states:

> **Trade secrets.** A person has a privilege, which may be claimed by the person or the person's agent or employee, to refuse to disclose and to prevent other persons from disclosing a trade secret owned by the person, if allowance of the privilege will not tend to conceal fraud or otherwise work injustice. When disclosure is directed, the judge shall take such protective measure as the interests of the holder of the privilege and of the parties and the furtherance of justice may require.

HRS § 482B-2 (2008) defines a "trade secret" as follows:

> "Trade secret" means information, including a formula, pattern, compilation, program device, method, technique, or process that:
>
> (1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
>
> (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Here, GEICO argued below that the complaints "reveal [GEICO's] trade secrets with regard to managing litigation; specific techniques and alleged practices for creating and enforcing GEICO's internal policies; and metrics for ensuring control of costs and calculating remuneration of employees." It does not appear that GEICO submitted any evidence supporting its trade secret claims.

The Circuit Court concluded that "[n]one of the contents GEICO seek to redact constitute 'trade secrets.'" FOFs/COLs/Order at 24. The court reasoned:

> a. GEICO have not shown that the information is novel or materially different from the litigation strategies, premium collection procedures or compensation plans of their competitors. See Woo[ v. Fireman's Fund Ins. Co.], 154 P.3d [236,] 240[ (Wash. Ct. App. 2007)].

---

[14/] GEICO asserts that the following portions of the complaints contain trade secrets: paragraphs 13, 23-31, 33-35, 37-41, 44, 48-49, 52, 68-69, 86, 88, 90, 92, 94-96, and 100 of the Complaint, and paragraphs 11, 21-29,31-33, 35-41, 44, 48-53, 57, 74-75, 92, 94, 98, 100-102, and 104 of the Amended Complaint.

> GEICO have not, for example, submitted declarations establishing that its litigation strategies, premium collection procedures or compensation plans are materially different from those of State Farm Insurance Company, or Farmers Insurance Company, or other of GEICO's competitors in the liability insurance marketplace.
>
> b.   GEICO have not shown that the information, if obtained by GEICO's business competitors, would unfairly hinder GEICO's ability to compete in the liability insurance marketplace.
>
> c.   GEICO have not shown that they expended significant amounts of time, money or other commercial resources to generate, develop or compile the information.

Id.

On appeal, GEICO reiterates that the information it seeks to protect "is about methods, techniques, and processes GEICO uses in very specific contexts to manage claims (including in litigation), enforce its own internal policies, and control costs."  However, GEICO submitted no evidence below to support its counsel's naked assertions that GEICO's claims management strategies and other internal policies meet the definition of a trade secret under HRS § 482B-2.  Conclusory claims such as these are insufficient to establish the existence of a trade secret. See, e.g., Kona's Best Nat. Coffee LLC v. Mountain Thunder Coffee Plantation Int'l, Inc., No. CAAP-12-0000593, 2017 WL 3310451, at *19 (App. 2017) (mem.) ("The Mountain Thunder Defendants did not present specific evidence of the information they claimed constituted trade secrets or why such information qualified as trade secrets."); McCallum v. Allstate Prop. & Cas. Ins. Co., 204 P.3d 944, 951 (Wash. Ct. App. 2009) ("The conclusory statements and unsubstantiated assertions in [the Allstate employees'] declarations are insufficient to establish the documents contained trade secrets.").

On this record, we conclude that GEICO failed to meet its burden to prove that the information in the complaints that it sought to redact constituted trade secrets.  Accordingly, the Circuit Court did not err in so ruling.

### IV. Conclusion

For the reasons discussed above, we affirm the July 6, 2018 "Order on Motion to Unseal (Filed May 22, 2016 [sic])" and the July 31, 2018 "Findings of Fact, Conclusions of Law and Order Denying GEICO's Motion to Reseal Filed Documents," both entered by the Circuit Court of the First Circuit.


On the briefs:

Barry W. Marr and
Emily R. Marr, with
Cary B. Lerman (pro hac vice),
Chad Golder (pro hac vice), and
Dahlia Mignouna (pro hac vice)
for Defendants-Appellants

Robert Brian Black and
Lisa Emily Engebretsen
for Non-Party-Appellee

/s/ Lisa M. Ginoza
Chief Judge

/s/ Katherine G. Leonard
Associate Judge

/s/ Clyde J. Wadsworth
Associate Judge